## RAILROAD COMPANY *v.* SMITH ET AL.

1. The law does not require a party to pay for imperfect and defective work the price stipulated for a perfect structure; and when that price is demanded, will allow him to deduct the difference between that price and the value of the inferior work, and also the amount of any direct damages flowing from existing defects, not exceeding the demand of the plaintiffs. The deduction is allowed in a suit upon the contract to prevent circuity of action.

2. The plaintiffs entered into a contract with the Florida Railroad Company to construct for the company a swinging drawbridge over a river in Florida, in accordance with a submitted plan and tracings, for a stipulated price. In an action upon the contract for the price stipulated, the company set up part payment, and alleged defective construction of the bridge and delays and expenses incident thereto, and claimed by way of recoupment to deduct from the demand of the plaintiffs the damages thus sustained. On the trial the deposition of a witness was offered, to whom interrogatories were put inquiring, *whether* the structure and arrangements of the bridge caused any injury or damage, hindrance or delay, to the company in the running of its railroad; and *whether* any hindrance or delay was caused by the imperfect construction of the bridge to any vessel in the navigation of the river; and *whether* the structure or working of the bridge rendered it liable to be injured or

destroyed by vessels navigating the river; and *what number* of hands were required to work the drawbridge, and what number would be necessary if it had been properly constructed; *Held*, that the interrogatories were pertinent and proper in themselves; that the objection that they related to speculative damages did not apply to the first and last, in which the damages sustained would be the subject of actual estimation, and that the facts sought would at least have furnished elements to the jury for a just estimate of the damages to be recouped from the demand of the contractor.

8. To render an exception available in this court it must affirmatively appear that the ruling excepted to affected or might have affected the decision of the case. If the exception is to the refusal of an interrogatory, not objectionable in form, put to a witness on the taking of his deposition, the record must show that the answer related to a material matter involved; or, if no answer was given, the record must show the offer of the party to prove by the witness particular facts, to which the interrogatory related, and that such facts were material.

4. Where a contract calls for the construction of a drawbridge upon which the cars of a railroad company can cross, it implies that the bridge shall be serviceable for that purpose and capable of being used with like facility as similar bridges properly constructed. If a defect in the condition of a pier upon which the bridge is to rest will prevent this result from being attained, it is the duty of the contractors to insist upon an alteration of the pier, or to make it themselves, before proceeding with the construction of the bridge.

5. Where a pier of a bridge was built under the supervision of an agent of the contractors for the bridge, and in accordance with his directions, he is held to have knowledge of any defect in the pier, and his knowledge in this particular is the knowledge of the contractors.

ERROR to the Circuit Court for the Northern District of Florida; the case being thus:

In November, 1866, Smith and another entered into a contract with the Florida Railroad Company, to construct for that company a swinging drawbridge at the crossing of its road over Amelia River, in Florida, in accordance with a submitted plan and tracings, for the sum of $4360, the bridge to be made of iron, except the chords, and ready for delivery to the company by the 1st of February following, and the money for its construction to be paid on its completion, in accordance with the specifications.

The present action was brought against the company upon this contract, and was in form to recover damages for its breach, but in fact to recover the money stipulated for the

work, the plaintiffs contending that the bridge was constructed by them in accordance with the contract, and was received by the company in the summer of 1867. In defence to the action the company set up part payment of the demand, and also alleged that the bridge was constructed in an imperfect and defective manner, so as to be unfit for the uses for which it was designed, and that to remedy its defects and make it of use, the company was compelled to incur large expenditures for material and labor, and was subjected to special damages by the detention it caused to a vessel on the river. The expenditures thus incurred and the special damages thus sustained the company sought by way of recoupment to deduct from the demand of the plaintiffs.

On the trial the defendant introduced evidence to show that the bridge was improperly constructed; that the draw was defective and worked with difficulty; that the contractors frequently received notice of the defects, and that they had admitted that the arrangements were imperfect and had made repeated efforts to remedy the defects until September, 1869; that the floor beams and stringers placed in the bridge were made of wood instead of iron, and that the difference between their cost and that of iron beams and stringers was about $2500; that the bridge was not completed so as to enable the cars of the company to cross upon it until the summer of 1867, and although then used by the company for the passage of cars, it was never formally received as constructed in accordance with the contract.

The defendants also offered the deposition of a witness by the name of Meador, taken in the case, and part of it was received and read. Some of the interrogatories to this witness and his answers to them were excluded. The deposition, as read, showed that the witness had acted as engineer of the Florida company during the construction of the bridge and until the summer of 1869; that its construction did not fulfil the conditions of an ordinary railroad drawbridge on account of the difficulty in opening and closing it; that it was not in good working order at any time dur-

ing his connection with the road; that the defects in the turning arrangements were communicated to the plaintiffs soon after the bridge was built, and that complaints con-. tinued to be made until he came away, in 1869. The interrogatories, the answers to which were excluded, were as follows:

. " 1st. State whether the structure and arrangements of said bridge caused any injury or damage, hindrance or delay, to the defendants in the running of the railroad on the same; and if so, state particularly what. ̄

" 2d. State whether or not any hindrance or delay was caused by the imperfect construction of said bridge to any vessel, steamboat, or craft in the navigation of said river over which said bridge was built; and if so, what.

" 3d. State whether or not the imperfect structure or working of said bridge caused danger of its injury or destruction by vessels navigating said river; if so, the reason of such damage.

" 4th. State the number of hands required to work said drawbridge, and how many would be necessary if properly constructed."

The objection to these interrogatories was that they related to speculative damages. The court excluded them and the answers to them, and the defendant's counsel excepted to the ruling. The answers were not contained in the record.

The defendants also offered to prove by experts that the plan of the machinery and the machinery itself on which the bridge rested and swung was so defective and so unskilfully put up, and the turning gear itself so defective and unskilfully attached, that it took eight or ten men to swing the bridge, and that the bridge had to be swung twice a week on an average at a cost of $15 every time it was swung. And further, to prove by experts that under a contract to build such a drawbridge as was specified in the contract between the parties to this suit, it was the common understanding among persons skilled in bridge building that the bridge should be so constructed as to be easily turned in two or three moments by one man. And further, to prove by ex-

perts that in the construction of bridges of the kind in question, it was always understood that whether the kind of material was specified or not the builders are bound to use good material and to make strong and substantial work adapted to the use and purpose for which it is intended. And further, to prove that in the profession and business of bridge building it is always understood by a contract to build a drawbridge that it is to be built of good material and in a workmanlike manner; and also to prove by experts that the quality of material of this bridge, both wood and iron, was very bad, and put together in an unworkmanlike manner.

The court ruled that the proof thus offered was inadmissible and irrelevant, and the defendant's counsel excepted.

There was evidence in the case offered on the part of the plaintiffs tending to show that the imperfect working of the draw of the bridge was owing to a defect in the pier, consisting in the variation of the pier from a level, as it was originally laid. It also appeared in evidence that the pier was built under the supervision of an agent of the contractors by the name of Grant, and in conformity with his directions, and was accepted by him as sufficient, and that he supervised also the construction of the bridge.

The court instructed the jury, in substance, that if they found from the evidence that the difficulty in turning the bridge arose from the defect in the pier, and not in the bridge, then the fault would be in the defendant, whose duty it was to put the pier in proper order to receive the bridge. The court continued:

"But it is urged that Grant, the agent of the plaintiffs for the building of the bridge, superintended and directed the laying of the granite coping of the pier, and, therefore, if imperfectly done, the plaintiffs were responsible. That may be true if it were shown that Grant in so doing was acting within the scope of his authority as agent for the plaintiffs; but unless the jury find from the evidence that Grant was authorized by the plaintiffs to furnish the pier as well as build the bridge, any direction *of his to the builder of the pier cannot affect or prejudice the*

rights of the plaintiffs, or bind them in any degree. There is no evidence that he had any authority from the plaintiffs to do anything but build the bridge."

To this instruction the defendants' counsel excepted.

The jury found a verdict for the plaintiffs, assessing their damages at $4014. Upon this verdict judgment was entered, to review which the case was brought here on writ of error.

*Mr. W. M. Merrick, for the plaintiff in error; Mr. J. H. B. Latrobe, contra.*

Mr. Justice FIELD, after stating the case, delivered the opinion of the court, as follows:

The interrogatories to the witness Meador, the answers to which were excluded, inquired whether the structure and arrangements of the bridge caused any injury or damage, hindrance or delay, to the company in the running of its railroad, and whether any hindrance or delay was caused by the imperfect construction of the bridge to any vessel in the navigation of the river, and whether the structure or working of the bridge rendered it liable to be injured or destroyed by vessels navigating the river, and what number of hands were required to work the drawbridge, and what number would be necessary if it had been properly constructed.

The exclusion of these interrogatories and the answers to them constitutes the first error assigned for a reversal of the judgment. The objection to them was that they related to speculative damages. This objection cannot apply to two of the inquiries, the first and the last stated. The damages sustained by the company by any detention of its cars from the imperfect working of the bridge would be the subject of actual estimation; and the same thing may be said when the difference was ascertained between the number of hands required to work the bridge and the number necessary if it had been properly constructed. The facts the inquiries sought to elicit would at least have furnished elements to the jury for a just estimate of the damages to be recouped from the demand of the plaintiffs. All damages directly

arising from the imperfect character of the structure, which would have been avoided had the structure been made pursuant to the contract, and for which the defendant might have instituted a separate action against the contractors, were provable against their demand in the present action. The law does not require a party to pay for imperfect and defective work the price stipulated for a perfect structure; and when that price is demanded, will allow him to deduct the difference between that price and the value of the inferior work, and also the amount of any direct damages flowing from existing defects, not exceeding the demand of the plaintiffs. This is a rule of strict justice, and the deduction is allowed in a suit upon the contract to prevent circuity of action. In some States the law goes further and permits the defendant to recover judgment for any excess in his damages over the demand claimed. But although the interrogatories were pertinent and proper in themselves, we are unable to decide whether any harm resulted from the ruling of the court in excluding them and the answers obtained, for the answers are not contained in the record. For aught that we can know, the witness may have answered that he was unable to state what injury or damage, hindrance or delay was occasioned to the company in the running of the road by the defective character of the bridge, or what number of hands were employed or would have been necessary if the bridge had been properly constructed. We cannot, therefore, see that any harm resulted to the defendant from the exclusion. Whatever may be the rule elsewhere, to render an exception available in this court it must affirmatively appear that the ruling excepted to affected or might have affected the decision of the case. If the exception is to the refusal of an interrogatory, not objectionable in form, the record must show that the answer related to a material matter involved; or, if no answer was given, the record must show the offer of the party to prove by the witness particular facts, to which the interrogatory related, and that such facts were material. Such has been the decision of this court in several cases, and was distinctly affirmed at the

present term in the case of *Packet Company* v. *Clough.*\* We must, therefore, dismiss the first assignment of error as untenable.

But the defendant also offered to prove by experts, among other things, that the plan of the machinery and the machinery itself on which the bridge rested and swings, was so defective and so unskilfully put up, and the turning-gear itself was so defective and unskilfully attached that it took eight or ten men to swing the bridge, and that the bridge had to be swung twice a week on an average at a cost of fifteen dollars each time; and that under a contract to build such a drawbridge as is specified in the contract between the parties, it is the common understanding among persons skilled in bridge building that the bridge should be so constructed as to be easily turned in two or three minutes by one man; and also, that the quality of the material of the bridge, both wood and iron, was bad, and was put together in an unworkmanlike manner. The Circuit Court held that the proof thus offered was inadmissible and irrelevant, and in this ruling there was manifest error. It in fact denied the right of the defendant to set up any damages sustained by way of recoupment. Whereas, that right exists in all cases where an action is brought upon a building contract, which imposes mutual duties and obligations, and there has been a breach of its terms, either in the manner or time of execution, on the part of the plaintiffs, for which a cross-action might be maintained by the defendants.

The counsel of the plaintiffs seek to avoid the error of this ruling by insisting, that the imperfect working of the bridge was owing to a defect in the pier and not to any defect in the bridge, and that it was the duty of the defendant to put the pier in proper order to receive the bridge. The court below took this view of the duty of the defendant, and instructed the jury in substance, that for any defects in the pier the defendant was alone chargeable, and that if the difficulty in turning the bridge arose from a defect in the pier and not

* 20 Wallace, 528.

in the bridge, the plaintiffs were not responsible to the defendant for the result and consequent damages. The evidence shows that the pier was built under the supervision of an agent of the contractors, and in accordance with his directions, and was adopted by him as sufficient. He was superintendent in the construction of the bridge, and the plaintiffs were bound and he as their superintendent was bound, before proceeding with the construction, to see that the pier was in a proper condition for the bridge. His adoption of the pier as built was, therefore, directly within the sphere of his agency. The alleged defect in the pier, if any existed, consisted in its variation from a level as it was originally laid, and of course, as justly observed by counsel, was patent to the builders at the inception and at every stage of the construction. Under such circumstances, the contractors can no more justify their proceeding with the work without satisfying themselves of the fitness of the pier for the superstructure intended, than they could justify the erection of the bridge at some other point on the river. In the case of *Jones* v. *McDermott*,[*] it was held that the performance of a contract to build a house for another on his soil, and that the work should be executed, finished, and ready for occupation, and be delivered over on a specified day, was not excused by the fact that there was a latent defect in the soil in consequence of which the walls sank and cracked, and the house became uninhabitable and dangerous and had to be partially taken down and rebuilt on artificial foundations. The present is a much stronger case for the application of the same principle. Here there was no latent defect discovered after the work was commenced. Whatever defect there was, was necessarily known to the agent of the contractors under whose supervision both the pier and the bridge were constructed. His knowledge in this particular was their knowledge. The contract called for the construction of a bridge upon which the cars of the company could cross, and implied that the bridge should be serviceable for that pur-

---

[*] 2 Wallace, 7.

pose and capable of being used with the like facility and ease as similar bridges properly constructed are used. If the condition of the pier, by its variation from a level or any other cause, prevented this result from being attained, it was the duty of the contractors to insist upon its alteration or to make the necessary alteration themselves. The position of counsel is, therefore, not tenable, and the instruction of the court upholding it was erroneous.

Other exceptions were taken to the rulings of the court, but as we have noticed those that went to the substance of the defence and the attempted answer to it, it is unnecessary to consider the case further.

JUDGMENT REVERSED, and the cause

REMANDED FOR A NEW TRIAL.