## DUSHANE *v.* BENEDICT.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE

WESTERN DISTRICT OF PENNSYLVANIA.

Argued December 14, 15, 1886.— Decided March 14, 1887.

In an action to recover less than $5000, in which the defendant asks for judgment upon a counterclaim for more than that sum, and the Circuit Court renders a general judgment for the plaintiff, a writ of error sued out by the defendant is within the jurisdiction of this court, under the act of February 15, 1875, c. 77, § 3.

In an action for goods sold and delivered, tried in the Circuit Court of the United States in Pennsylvania, the defendant, under a plea of "payment with leave," and by way of recoupment, may prove damages resulting to him from a breach of warranty; or from a fraudulent representation of the seller that the goods were of a certain quality or fit for a certain purpose.

Under the statute of Pennsylvania of 1705, which allows the defendant, in an action upon a contract, to set off any matter of contract, and to recover judgment thereon against the plaintiff, upon proving that the plaintiff owes him more than he owes the plaintiff, the defendant, in an action for goods sold and delivered, may set off a claim in the nature of assumpsit upon a warranty; but not a claim for a fraudulent representation, or other claim sounding in tort only.

If rags sold as clean and free from infection, and fit to be manufactured into paper, are proved to have been infected with the small-pox, and to have caused it to break out in the buyer's paper-mill, whereby some of the workmen died, others were disabled from working, and the buyer paid certain sums to support those so disabled, and was obliged to run his mill short-handed, and lost a considerable part of a profitable trade; and the seller testifies that he bought the rags in a region where he knew

the small-pox was epidemic, from any and all dealers, not knowing where they were collected, and that they were assorted and baled up under his instructions; and falsely testifies that the rags sold had been baled up in his warehouse for a year before, and had no disinfectants in them; this is sufficient evidence to be submitted to a jury of a breach of warranty or a fraudulent representation on the part of the seller, and of damages to the buyer. But the court may properly decline to permit the buyer to testify in general terms what he estimates the amount of his damages to be, without stating the items of damage, or any facts upon which his opinion is based.

The testimony of witnesses, not shown to be experts, that the infected condition of rags was the cause of a breaking out of the small-pox is incompetent.

THIS was an action of assumpsit, brought by Benedict, a citizen of Pennsylvania and rag-dealer at Pittsburgh, against Dushane and Stonebraker, citizens of Maryland and paper-makers at Hagerstown, to recover $813.03 for rags sold and delivered by him to them on February 7, 1882, as appeared by the plaintiff's affidavit to a copy of the bill from his book of original entry.

Plea: " Defendants plead payment, with leave, &c., and the special matter stated in affidavits of defence, and they claim damages upon the cause of action stated in said affidavits in the sum of seven thousand dollars in excess of the amount sued for by plaintiff."

The defendants had filed, before their plea, two affidavits of Stonebraker, the statements in the second of which included those in the first, and were as follows:

" The following facts are stated as a just defence to the whole of plaintiff's claim. Plaintiff is a rag-dealer, having his stock in trade in the city of Pittsburgh. In February, 1882, he came to see defendants at Hagerstown, Md., and solicited an order for rags and paper. On behalf of defendant firm, I gave him an order for substantially the quantities and kinds described in the exhibit attached to his affidavit. Nicely assorted print and book rags were designated as the subject matter of said contract, but no rags were accepted, inspected, or even seen by defendants or any one acting for them. The rags which the plaintiff shipped from Pittsburgh, professedly in fulfilment of said contract, were packed in bales, and their

character could not be discovered until the bales were unpacked. After some of them had been unpacked and used, nine of defendants' sorters were stricken with small-pox and varioloid, and the disease spread rapidly among the employees and those living near the mill, causing the death of five persons and preventing many others from working. Others became alarmed. When the reports of the epidemic spread, customers refused to buy defendants' paper. They were unable to hire workmen at the usual rates, and some refused to work on any terms. By reason of the premises and of the interruption of defendants' business occasioned thereby, money paid for the support of those disabled by said disease, injury to defendants' said business, &c., defendants suffered loss and were put to expense far exceeding the amount of plaintiff's bill. The said rags were infected with small-pox before plaintiff shipped them. I am informed and believe, and expect to prove, that he well knew them to be infected before he shipped them. If defendants had known them to be infected, they would have refused to receive them. The rags they contracted for and were to receive, according to the clear understanding between them and plaintiff, were good merchantable rags, free from infection. The infection conveyed in said rags was the sole cause of the breaking out of said disease in the manner above described; and they were shipped by plaintiff with intent to deceive, cheat and defraud the said defendants. As soon as practicable after the discovery of said infection, defendants wrote to plaintiff, stating the facts, and telling him that all the rags not consumed before said discovery was made were held subject to his order; and they were all still so held until defendants' foreman, being compelled to remove the said rags, and mistaking defendants' orders to the contrary, turned them into the rotary boiler without sorting them, for the purpose of getting rid of the risk of infection attendant upon their remaining in the mill.

"For the rags so used, it is submitted that defendants ought not to pay the price charged by plaintiff, but such amount only as they were reasonably worth, if they were worth anything. Defendants will ask for a certificate for the

amount of damages in excess of the true amount to which plaintiff may be entitled."

The plaintiff, by counter affidavit of claim, denied that the rags were infected, or that the contract provided that they should be free from infection, or that the alleged infection was the cause of the breaking out of the disease, or that he knew the rags to be infected before he shipped them, or that he shipped them with any intent of deceiving, cheating or defrauding the defendants, or that the defendants suffered any loss in consequence of the alleged infection.

At the trial, the plaintiff, having been called as a witness in his own behalf, testified on cross-examination that the rags in question were collected by him in Pittsburgh, Allegheny City, and the country round about, and were assorted in his establishment, and baled under his special instructions by his foreman; that he bought rags from any and all dealers who offered him merchantable rags, not knowing where they were collected; that he thought the word "clean" was not used in his offer to the defendants; that to the best of his knowledge and belief the rags shipped to the defendants were clean, and there was no sulphur, carbolic acid or other disinfectant in the bales; that he never used disinfectants in his establishment; that he knew that the small-pox was epidemic in those two cities at and before the time when the rags were shipped; but that these rags had been baled up and lain in his warehouse for a year or more before.

One of the defendants, being called as a witness in their behalf, produced a letter received from the plaintiff with the invoice of the rags, in which the plaintiff said that he had shipped some of them that day, and expected to ship the rest the next day, and that he might not have quite enough then, but would send them a few days after. And three of the workwomen in the mill testified that the rags, when opened, smelt strongly of sulphur and carbolic acid.

The defendants also introduced evidence tending to show that the contract was for clean, nicely assorted, print and book rags; that the rags, when delivered at the mill, were packed in bales, which were immediately opened; that the

rags were very filthy, emitted a sickening smell, and were infected with the small-pox; that twelve days afterwards the small-pox broke out in the mill, and caused the death of some of the work-people, disabled others, frightened away some, and prevented customers from coming to the mill; that the infected condition of the rags was the cause of the breaking out of the disease; that the defendants supplied the sick with provisions and other necessaries to the amount of $200, and were obliged to run their mill short-handed, made less paper, and lost a considerable part of a profitable country trade; but offered no other evidence of the particulars of the damage which they had suffered.

While one of the defendants was on the witness stand, their counsel asked him what he estimated the amount of his damage to be. The plaintiff's counsel objected to the question, on the ground "that it was not competent for the witness to give a lumping estimate of the defendants' damages, but that he should specify the items of damage, and testify to facts, his opinion being inadmissible." The court sustained the objection and excluded the evidence.

The court also excluded testimony of one of the persons who had taken the small-pox, that the breaking out of the disease was caused by these rags; and testimony of another workman, that two of his children had taken the small-pox by playing with infected rags.

In answer to an inquiry of the court, just before charging the jury, "what, under the proofs, the position of the defendants was," their counsel stated that "the defendants only insisted upon their counterclaim for damages on the cause of action growing out of the infected condition of the rags;" and thereupon the court charged the jury as follows:

"The sale at the price sued for and the delivery of the rags are admitted, and it is shown that the defendants used the whole of them in the manufacture of paper, which they disposed of. The defendants, however, allege, and this is the sole ground of defence insisted on, that the rags were infected with small-pox, and introduced the disease among the defendants' employees, a number of whom took small-pox, and

several of whom died of the disease; and the defendants maintain that, by reason of such introduction of the disease into their mill, they were injured in their business, and sustained damages in excess of the plaintiff's claim, and hence that they not only have a full defence to this claim, but are entitled to a certificate for the damages sustained by them in excess of his claim."

" *The defendants go to the length of charging that the plaintiff knew the rags were infected with small-pox when he shipped them to the defendants, and in so doing acted with positive bad faith to the defendants. But it seems to me that the evidence would not justify the jury in so finding, or the court in submitting to the jury the question of bad faith; nor can I now recall evidence sufficiently showing that the plaintiff was even guilty of culpable negligence in his purchase of these rags.*

" *However, the damages claimed by the defendants, if not in their nature too remote and speculative, are, it seems to me, altogether uncertain under the evidence. I am of opinion, and charge you, that the evidence in the case is not such as would enable the jury to ascertain the amount of damages, if any, which the defendants sustained.*

" *Upon the whole case, the court instructs the jury to find a verdict for the plaintiff for the amount of his claim.*"

The jury returned a verdict for the plaintiff accordingly, and the defendants excepted to the rulings excluding evidence, and to those portions of the charge above printed in italics, and sued out this writ of error.

*Mr. W. Macrum* for plaintiffs in error. *Mr. A. H. Clarke* was with him on the brief.

*Mr. William F. Mattingly* for defendant in error. *Mr. Simon Wolf* was with him on the brief.

Mr. Justice Gray delivered the opinion of the court.

This was an action of assumpsit by a rag-dealer against papermakers to recover $813.03 for rags sold and delivered by him to them. The plea was in the peculiar form used in Pennsylvania, with a counterclaim. The plaintiff had a verdict and

judgment, and the case comes before us on a writ of error sued out by the defendants.

The plaintiff's motion to dismiss the writ of error, for want of a sufficient amount in dispute to give this court jurisdiction, cannot be sustained, since the record shows that the defendants sought to recover the sum of $7000 in excess of the plaintiff's claim, and this sum was therefore in dispute. *Ryan* v. *Bindley*, 1 Wall. 66; Act of February 16, 1875, c. 77, § 3, 18 Stat. 316. Whether the defendants could lawfully recover it against the plaintiff in this case was a matter affecting the merits, and not the jurisdiction.

Before proceeding to consider the rulings and instructions at the trial, as applied to the facts of the case, it will be convenient to refer to the general rules of law, and to the statute and decisions in Pennsylvania, which bear upon the subject.

When a dealer contracts to sell goods which he deals in, to be applied to a particular purpose, and the buyer has no opportunity to inspect them before delivery, there is an implied warranty that they shall be reasonably fit for that purpose. *Jones* v. *Just*, L. R. 3 Q. B. 197, 203; *S. C.* 9 B. & S. 141, 150; *Kellogg Bridge Co.* v. *Hamilton*, 110 U. S. 108. In such a case, in Pennsylvania, as at common law, the action upon the warranty may be either in contract or in tort. *Vanleer* v. *Earle*, 26 Penn. St. 277; *Schuchardt* v. *Allens*, 1 Wall. 359, 368. If the seller falsely represents to the buyer that the goods are of a certain quality, or fit for a certain purpose, he is liable to an action for the fraudulent representations, although they are not in a form to constitute a warranty; and in such a case the action must be in tort in the nature of an action of deceit, and must be supported by proof that he knew the representations to be false when he made them. *Kimmel* v. *Lichty*, 3 Yeates, 262; *McFarland* v. *Newman*, 9 Watts, 55;[1] *King* v. *Eagle Mills*, 10 Allen, 548.

The damages recoverable for a breach of warranty, or for a false representation, include all damages which, in the contemplation of the parties, or according to the natural or usual course

---

[1] *S. C.* 34 Am. Dec. 497.

of things, may result from the wrongful act. For instance, if a man sells hay or grain, for the purpose of being fed to cattle, or such as is ordinarily used to feed cattle, and it contains a substance which poisons the buyer's cattle, the seller is responsible for the injury. *French* v. *Vining*, 102 Mass. 132; *Wilson* v. *Dunville*, 4 L. R. Ir. 249, and 6 L. R. Ir. 210. So, if one sells an animal, warranting or representing it to be sound, which is in fact infected with disease, he is responsible for the damages resulting from a communication of the disease to the buyer's other animals; either in an action of tort for the false representation; *Mullett* v. *Mason*, L. R. 1 C. P. 559; *Jeffrey* v. *Bigelow*, 13 Wend. 518;[1] *Faris* v. *Lewis*, 2 B. Monroe, 375; *Sherrod* v. *Langdon*, 21 Iowa, 518; *Marsh* v. *Webber*, 16 Minn. 418; or in an action on the warranty, either in tort; *Packard* v. *Slack*, 32 Vt. 9; *Smith* v. *Green*, 1 C. P. D. 92; or even in contract. *Black* v. *Elliott*, 1 Fost. & Finl. 595. See also *Randall* v. *Newson*, 2 Q. B. D. 102.

In an action for the price of goods sold, or of work done, the defendant may set up a breach of warranty or a false representation as to the goods, or a defective performance of the work, by way of recoupment of the sum that the plaintiff may recover. In England, this is only allowed so far as it affects the value of the goods sold, or of the work done. *Davis* v. *Hedges*, L. R. 6 Q. B. 687, and cases there cited. But in this country the courts, in order to avoid circuity of action, have gone further, and have allowed the defendant to recoup damages suffered by him from any fraud, breach of warranty, or negligence, of the plaintiff, growing out of and relating to the transaction in question. It will be enough to cite a few cases in which the extent and the reason of the doctrine have been clearly brought out.

In a leading Massachusetts case, in which fraudulent representations as to the soundness of a horse sold were allowed to be set up in defence of an action on a promissory note given for the price, although the horse had not been returned to the seller, Mr. Justice Dewey, after reviewing the previous decisions

---

[1] *S. C.* 28 Am. Dec. 476.

in England and in New York, said: "The strong argument for the admission of such evidence in reduction of damages in cases like the present is, that it will avoid circuity of action. It is always desirable to prevent a cross action where full and complete justice can be done to the parties in a single suit, and it is upon this ground, that the courts have of late been disposed to extend to the greatest length, compatible with the legal rights of the parties, the principle allowing evidence in defence or in reduction of damages to be introduced, rather than to compel the defendant to resort to his cross action." *Harrington* v. *Stratton*, 22 Pick. 510, 517. And in a later case in that state, Chief Justice Bigelow observed, that the essential elements on which the application of the principle of recoupment depended were two only: "The first is, that the damages which the defendant seeks to set off shall have arisen from the same subject matter, or sprung out of the same contract or transaction, as that on which the plaintiff relies to maintain his action. The other is, that the claim for damages shall be against the plaintiff, so that their allowance by way of set-off or defence to the contract declared on shall operate to avoid circuity of action, and as a substitute for a distinct action against the plaintiff to recover the same damages as those relied on to defeat the action." *Sawyer* v. *Wiswell*, 9 Allen, 39, 42.

In *Bradley* v. *Rea*, 14 Allen, 20, in an action to recover the price of a number of pigs sold in one lot, it was held that the defendant might set up in defence that the pigs sold were warranted or fraudulently represented by the plaintiff to be sound and free from infectious or contagious diseases, and prove the existence of such a disease in some of the pigs at the time of the sale, which afterwards spread to the others, and of which they died. Mr. Justice Hoar, delivering judgment, after referring to *Mullett* v. *Mason*, L. R. 1 C. P. 559, above cited, in which it was held that in an action for fraudulently misrepresenting that a cow sold was free from infectious disease, the buyer, if he placed the cow with others which thereby caught the disease and died, could recover as damages the value of all the cows, said: "The nature of the subject matter of the warranty

or deceit is such, that when animals are sold in one lot together, the warranty or representation as to the whole being single, we can have no doubt that the same principle should apply to the extent of a recoupment; and that the right to recoup in damages should not be confined to the diminished value of those which are proved to have the disease at the time of the sale." 14 Allen, 23. A similar decision was made in *Rose* v. *Wallace*, 11 Indiana, 112.

The later decisions of this court, modifying the earlier decision in *Thornton* v. *Wynn*, 12 Wheat. 183, affirm the same doctrine. *Withers* v. *Greene*, 9 How. 213; *Van Buren* v. *Digges*, 11 How. 461; *Winder* v. *Caldwell*, 14 How. 434; *Lyon* v. *Bertram*, 20 How. 149, 154; *Railroad Co.* v. *Smith*, 21 Wall. 255; *Marsh* v. *McPherson*, 105 U. S. 709, 717.

In *Winder* v. *Caldwell*, Mr. Justice Grier, who was equally familiar with the common law and with the Pennsylvania practice said: "Although it is true, as a general rule, that unliquidated damages cannot be the subject of set-off, yet it is well settled that a total or partial failure of consideration, acts of nonfeasance or misfeasance, immediately connected with the cause of action, or any equitable defence arising out of the same transaction, may be given in evidence in mitigation of damages, or recouped; not strictly by way of defalcation or set-off, but for the purpose of defeating the plaintiff's action in whole or in part, and to avoid circuity of action." 14 How. 443.

In *Railroad Co.* v. *Smith*, which was an action against a railroad corporation by a contractor to recover the price of a drawbridge, it was held that the defendant might show that the construction of the bridge was so defective as to make it unfit for its purpose, and the draw worked so imperfectly as to hinder and delay the running of the cars over it; and might prove the number of hands required to work the bridge as it was built, and the number that would be necessary if it had been properly constructed. Mr. Justice Field, delivering judgment, said: "All damages directly arising from the imperfect character of the structure, which would have been avoided had the structure been made pursuant to the contract, and for which the defendant might have instituted a

separate action against the contractors, were provable against their demand in the present action. The law does not require a party to pay for imperfect and defective work the price stipulated for a perfect structure; and when the price is demanded, will allow him to deduct the difference between that price and the value of the inferior work, and also the amount of any direct damages flowing from existing defects, not exceeding the demand of the plaintiffs. This is a rule of strict justice, and the deduction is allowed in a suit upon the contract to prevent circuity of action." 21 Wall. 261.

The courts of Pennsylvania, having originally had no jurisdiction in equity, have always allowed equitable defences in actions at law, under what is there known as a "plea of payment with leave," that is to say, with leave to prove any special matter. *Swift* v. *Hawkins* (1768), 1 Dall. 17; *Lewis* v. *Morgan* (1824), 11 S. & R. 234; *Light* v. *Stoever* (1825), 12 S. & R. 431, 433; *Mackey* v. *Brownfield* (1825), 13 S. & R. 239; *Hawk* v. *Geddis* (1827), 16 S. & R. 23; *McConnell* v. *Hall* (1831), 3 Penrose & Watts, 53; *Uhler* v. *Sanderson* (1861), 38 Penn. St. 128. And the practice was long ago recognized and acted on by Mr. Justice Washington in the Circuit Court. *Latapee* v. *Pecholier*, 2 Wash. C. C. 180, 184; *Webster* v. *Warren*, 2 Wash. C. C. 456, 458.

In matters of contract, the defendant's right of set-off, with the additional right to recover judgment against the plaintiff for any sum proved in excess of his claim, is given and regulated by a statute which has been in force in Pennsylvania since 1705, and is there commonly known as the Defalcation Act, by which "if two or more dealing together be indebted to each other upon bonds, bills, bargains, promises, accounts, or the like, and one of them commence an action in any court of this province, if the defendant cannot gainsay the deed, bargain or assumption upon which he is sued, it shall be lawful for such defendant to plead payment of all or part of the debt or sum demanded, and give any bond, bill, receipt, account or bargain in evidence; and if it shall appear that the defendant hath fully paid or satisfied the debt or sum demanded, the jury shall find for the defendant, and judgment shall be

entered that the plaintiff shall take nothing by his writ, and shall pay the costs. And if it shall appear that any part of the sum demanded be paid, then so much as is found to be paid shall be defalked, and the plaintiff shall have judgment for the residue only, with costs of suit. But if it appear to the jury that the plaintiff is overpaid, then they shall give in their verdict for the defendant, and withal certify to the court how much they find the plaintiff to be indebted or in arrear to the defendant, more than will answer the debt or sum demanded;" and the sum so certified shall be recorded with the verdict, and be deemed a debt of record, and may be recovered by *scire facias*, or, under an act of 1848, by judgment and execution therefor. 1 Dall. Laws of Penn. p. 65; 1 Purd. Dig. (11th Ed.) 603, 604.

This statute, in its very terms, embraces all matters of contract, and no matter of tort; and so it has always been construed. A breach of warranty is a breach of a contract, and may be sued on as such; and for that reason, and that only, has been allowed to be given in evidence by the defendant, under the statute, not only in an action on the same contract (in which it might be admissible by way of recoupment only, without the aid of the statute), but even in an action upon a distinct contract. *Steigleman* v. *Jeffries,* 1 S. & R. 477;[1] *Nickle* v. *Baldwin,* 4 W. & S. 290; *Phillips* v. *Lawrence,* 6 W. & S. 150; *Carman* v. *Franklin Ins. Co.,* 6 W. & S. 155; *Ellmaker* v. *Franklin Ins. Co.,* 6 W. & S. 439; *Hunt* v. *Gilmore,* 59 Penn. St. 450; *Seigworth* v. *Leffel,* 76 Penn. St. 476; *Halfpenny* v. *Bell,* 82 Penn. St. 128. But from the earliest to the latest times it has been uniformly held that a claim of damages for a mere tort is not within the statute. *Kachlin* v. *Mulhallon* (1795), 2 Dall. 237; *S. C. nom Kachlein* v. *Ralston,* 1 Yeates, 571; *Heck* v. *Shener* (1818), 4 S. & R. 249;[2] *Gogel* v. *Jacoby* (1819), 5 S. & R. 117;[3] *Cornell* v. *Green* (1823), 10 S. & R. 14; *Light* v. *Stoever* (1825), 12 S. & R. 431; *Hubler* v. *Tamney* (1836), 5 Watts, 51, 53; *Peterson* v. *Haight* (1838), 3 Wharton, 150; *Hunt* v. *Gilmore* (1868), 59 Penn. St. 450, 452; *Ahl* v. *Rhoads* (1877), 84 Penn. St. 319, 325.

---

[1] *S. C.* 7 Am. Dec. 626.     [2] *S. C.* 8 Am. Dec. 700.     [3] *S. C.* 9 Am. Dec. 339.

The distinction between the right of· equitable defence or recoupment, independent of any statute, which may arise even out of a tortious act of the plaintiff, immediately connected with the contract sued on, and by which the defendant can do no more than defeat the plaintiff's claim, in whole or in part; and the right of counterclaim under this statute, which can be based only on contract, and by which the defendant may not only defeat the plaintiff's action, but recover an affirmative judgment against him; has been clearly brought out in the judgments of Chief Justice Tilghman.

In assumpsit to recover for services as a housekeeper, the defendant pleaded non assumpsit, and payment, with leave to give the special matters in evidence; and offered to prove that the plaintiff, while in his service, clandestinely took and sent away goods of his from the house. Chief Justice Tilghman, after observing that it was contended for the defendant " that the evidence·was proper, either by way of set-off, or, under the plea of non assumpsit, as a defence to the action," expressed the opinion that it was not admissible by way of set-off, because it had been settled that the statute did not comprehend matters of a tortious nature; but that, considering the impolicy of multiplying suits, and the hardship of not permitting the defendant to avail himself of matters arising out of the very transaction on which the plaintiff founds his suit, the evidence offered was admissible under the plea of non assumpsit, to show that the plaintiff's services were ill performed, and thus to affect the amount which she could recover; and on this ground alone the judgment below, which excluded the evidence, was reversed. *Heck* v. *Shener*, 4 S. & R. 249.[1]

So in assumpsit for goods sold and delivered, it was held that the defendant could not give in evidence, by·way of set-off, that the goods had been detained by the plaintiff and conveyed by him to third persons; and the same eminent judge said: " Without undertaking, at present, to draw the line which limits the right of defalcation, it may be safely affirmed, that defalcation is not per̃tted by reason of any demand against the plaintiff for an act done ·by him of a tortious nature."

---

[1] *S. C.* 8 Am. Dec. 700. .

"But there are cases, in which the defendant is permitted to give evidence of acts of nonfeasance or misfeasance by the plaintiff, where these acts are immediately connected with the plaintiff's cause of action; although perhaps such evidence is not so properly a defalcation, as a defeating, in whole or in part, the plaintiff's action." *Gogel* v. *Jacoby*, 5 S. & R. 117, 122.[1]

Again: in debt against principal and surety on a bond given for the purchase money of a mill sold by the plaintiff to the principal defendant, the defendants proved that at the time of the sale the grantee supposed the dam was at its lawful height, whereas it was in fact, as the plaintiff knew, so high as to overflow and injure the land and mill of a neighbor without his consent; and that if the grantee should lower his dam to its lawful height, the value of his mill would be greatly reduced; and then offered to show how much the value of his mill would be diminished by so lowering the dam. It was held that the evidence, though going to prove unliquidated damages, was admissible, for reasons thus stated by Chief Justice Tilghman: "It is very true that these damages were not in the nature of a debt, which can be set off. But they were not offered as a set-off. It was an equitable defence, showing that the plaintiff ought not to be permitted to recover the whole purchase money; and if not, then it was necessary to show what would be a reasonable abatement. Such defences have always been admitted in our courts. Having no court of chancery, we could not get along without them. To permit the plaintiff to recover the whole purchase money, and leave the defendants to their remedy by an action for fraudulent concealment, would be most unjust. The purchase money and damages arise out of the same transaction, and the proper time for inquiry was before the money was taken from the pocket of the defendants. It might be too late afterwards. And certainly the plaintiff has no right to complain, if the whole business is settled at once. What he is not, in good conscience, entitled to receive, he should not be permitted to receive." *Light* v. *Stoever*, 12 S. & R. 431, 433.

The result of the Pennsylvania decisions may be summed

---

[1] *S. C.* 9 Am. Dec. 339.

up thus: First. Independently of the statute, any matter, either of contract or of tort, immediately connected with the plaintiff's cause of action, (which would seem to include everything that could be set up by way of recoupment, under the law as generally understood and administered in the American courts,) may be set up by way of defence to the action and in abatement of the plaintiff's damages only. Second. Any matter of contract may be set up by way of counterclaim, under the statute, not only to defeat the plaintiff's action, in whole or in part, but also, if the defendant proves that the plaintiff owes him more than he owes the plaintiff, for the purpose of recovering the excess against the plaintiff. Third. No mere matter of tort can be availed of by the defendant under the statute.

The defendants in the present case pleaded "payment, with leave, &c.," and the special matter stated in the affidavits of defence previously filed, with a counterclaim upon the cause of action stated in those affidavits. Their purpose in so pleading apparently was to give notice to the plaintiff, both of the special matter to defeat his claim, and also of a defalcation or set-off, on which the defendants would ask for a certificate and judgment against the plaintiff, under the statute, for any balance due from him. In the words of Chief Justice Black, " A notice of special matter must state the facts upon which the defendant relies, and not either the evidence by which they are to be established, or the inferences to be drawn from them." *Hartman* v. *Keystone Ins. Co.*, 21 Penn. St. 466, 475. The plaintiff might perhaps have objected to the admission of any other evidence than of payment, for want of any notice to him, independently of the affidavits, of the matters intended to be relied on by way of defence and of counterclaim. *Finlay* v. *Stewart*, 56 Penn. St. 183. But no such objection having been made at the trial, it could not be taken for the first time in this court. *Calvin* v. *McClure*, 17 S. & R. 385; *Rearich* v. *Swinehart*, 11 Penn. St. 233;[1] *Partridge* v. *Insurance Co.*, 15 Wall. 573, 580. Indeed, no objection to the sufficiency of the notice of special matter was taken in argument here.

---

[1] *S. C.* 51 Am. Dec. 540.

The special matter stated in the affidavits of defence was, that the plaintiff came to the defendants' mill, and there solicited and obtained an order for good merchantable rags, free from infection; that the defendants had no opportunity to inspect the rags before delivery; that the rags sent were infected with the small-pox before the plaintiff shipped them; that when some of them were unpacked and used at the defendants' mill, the infection in the rags caused the small-pox to break out in the mill, in consequence of which some of the workmen died, others were disabled from working, it became impossible to hire new ones at the usual rates, and customers were deterred from buying the defendants' paper; that by reason of the interruption and injury to the defendants' business thereby occasioned, and the money paid by the defendants to those disabled by the disease, they were put to loss and expense far exceeding the amount of the plaintiff's bill; that the plaintiff shipped the rags, knowing them to be infected, and intending to deceive, cheat and defraud the defendants; and that the defendants, as soon as they discovered the infection, informed the plaintiff of the fact, and held those which had not been consumed subject to his order, until their foreman by mistake used them up. The affidavits concluded by submitting that the defendants ought not to pay the prices charged, but such amount only as the rags were reasonably worth, if anything; and by asking for a certificate for the amount of their damages in excess of what the plaintiff might be entitled to.

In short, the matter stated in the affidavits of defence was a sale of rags, upon a warranty or a fraudulent representation that they were clean and free from infection, and a delivery by the plaintiff, under that contract of sale, of rags infected with the small-pox, causing the breaking out of the disease in the defendants' mill, and consequent injuries to their workmen and their business. The plaintiff, by counter affidavit of claim, met all the issues so notified to him by the defendants' plea and affidavits.

At the trial, the defendants, as appears by the answer of their counsel to an inquiry of the court after the arguments to

the jury, and by the statement thereupon made by the court in its charge, did not deny the sale and delivery of the rags at the prices sued for; but relied on their counterclaim for damages on the cause of action growing out of the infected condition of the rags, both by way of a full defence to the plaintiff's action, and also as a ground for obtaining a certificate and judgment for the damages sustained by them in excess of his claim.

The defendants offered evidence tending to show that the contract was for clean rags, that the rags delivered were filthy and infected with the small-pox, and that their infected condition caused the breaking out of the disease in the defendants' mill. This was of itself sufficient evidence to be submitted to the jury of a warranty and a breach of it. A warranty, express or implied, that rags sold are fit to be manufactured into paper, is broken, not only if they will not make good paper, but equally if they cannot be made into paper at all, without killing or sickening those employed in the manufacture.

Upon the question whether the plaintiff, when he shipped the rags, knew them to be infected with the small-pox, and fraudulently represented to the defendants that they were clean and free from infection, the evidence was as follows: The plaintiff, having been called as a witness in his own behalf, admitted on cross-examination that the rags were collected by him in Pittsburgh and Allegheny City and the country round about, where he knew that the small-pox was then epidemic, and that he bought rags from any and all dealers, not knowing where they were collected; and further testified that the rags were assorted and baled up under his instructions in his establishment, and had been baled up and lain in his warehouse for a year or more before; that to the best of his knowledge and belief they were clean and free from infection, and there was no sulphur, carbolic acid or other disinfectant in the bales; and that he never used disinfectants in his establishment. In contradiction of this testimony, the defendants produced a letter sent to them by him with the first invoice of rags, showing that he did not then have all the rest on hand; and introduced the testimony of three workwomen in the mill,

that the rags, when opened, smelt strongly of sulphur and carbolic acid.

This evidence, taken in connection with that already mentioned, was in our opinion sufficient to be submitted to the jury, as tending to prove that the plaintiff knew that the rags which he sold and shipped as clean rags, fit to be used in the manufacture of paper, were in fact infected with the small-pox, and that he fraudulently represented them to be clean, intending to deceive and defraud the defendants.

Upon the question of damages, there was distinct proof, not only of the rags being so infected with the small-pox that they could not be made into paper without injury to the workmen, but also of sums paid by the defendants to support those workmen who had been disabled by the disease; besides evidence that the defendants, in consequence of the injury to their business by the small-pox introduced in the rags, were obliged to run their mill short-handed, and lost a considerable part of a profitable country trade. This evidence was competent for the consideration of the jury; and the want of more full and definite proof of the amount of damages resulting to the defendants from the unfitness of the rags to be manufactured into paper, while it might lessen the sum which the jury could find in the defendants' favor, did not justify the court in withdrawing the defendants' claim from the jury.

In the rulings excluding evidence offered by the defendants in the course of the trial, there was no error. The court might properly decline to permit one of the defendants to testify in general terms what he estimated the amount of their damages to be, when he had not testified to the items of damage, or to any facts upon which his opinion was based. The testimony of workmen, not shown to be experts, that the infected rags were the cause of small-pox, which they or their children had taken, was clearly incompetent.

But for the reasons above stated, we are of opinion that the court erred in instructing the jury that the evidence admitted would not justify them in finding that the plaintiff knowingly and fraudulently shipped to the defendants rags infected with the small-pox; as well as in instructing them that there was no

evidence which would enable the jury to estimate the amount of damage, if any, which the defendants had sustained; and in directing the jury to return a verdict for the plaintiff for the whole amount of his ·claim. The defendants' exceptions to these instructions must therefore be sustained, and a new trial had.

For the guidance of the parties and their counsel, it may be well to re-state exactly what will be open to the defendants upon another trial.

By way of recoupment or equitable defence, which is limited to defeating the plaintiff's action, in whole or in part, the defendants may avail themselves of any evidence tending to show that by reason, either of a breach of warranty, or of a fraudulent representation, the goods were worth less than they would have been if they had been such as they were warranted or represented to be; as well as of any evidence tending to show that the defendants suffered damages which, in the contemplation of the parties, or according to the natural or usual course of things, were the consequences of the breach of warranty, or the fraudulent representation.

But under their counterclaim, seeking, as permitted by the statute of Pennsylvania, not only to defeat the plaintiff's action, but also to recover an affirmative judgment against him, they can avail themselves only of a claim sounding in contract, in the nature of an action of assumpsit upon the supposed warranty. If they fail to prove a warranty, express or implied, the statute can have no application; because it extends to no claim sounding in tort only, whether in the nature of an action of deceit, or of such an action as these defendants might maintain against a person, with whom they never had any contract, who wilfully or negligently introduced the small-pox into their mill.

*Judgment reversed, and case remanded to the Circuit Court, with directions to set, aside the verdict and to order a new trial.*