## BELLMORE v. BAUM.

### Nos. 838–842.

Municipal Court of Appeals for the District of Columbia.

Argued Aug. 26, 1949.

Decided Oct. 7, 1949.

Herman Miller, Washington, D. C., for appellant.

Jacob N. Halper, Washington, D. C. (Albert Langerman, Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

This appeal involves five suits for possession of commercial and residential property. A jury found in favor of the tenant for possession and also granted him a money judgment for double the amount of certain rent overcharges plus damages. The landlord has brought the case here for review.

The premises in litigation are in a building on the corner of 7th and F Streets, S. W. On the first floor of the building there are two stores, the one on the corner being a dry-cleaning shop and facing both F and 7th Streets. At the rear or south end of this shop on 7th Street there is an entrance and a hall and stairway which lead to the second floor. This is numbered 601 7th Street, S. W. Upstairs there are six rooms, three on each side of a hall. The three on the 7th Street side of the building, directly above the dry-cleaning shop, were used as an apartment by tenant. These three rooms include a bathroom but no kitchen facilities. The other three rooms are reached from the same entrance on 7th Street, but are in fact above a rummage shop numbered 702 F Street, S. W. These rooms have neither bath, running water, nor kitchen facilities and can only be reached from the 7th Street entrance. The cleaning shop, the apartment above, and these three rooms are all in litigation here.[1]

Of her five suits for possession, the landlord filed two on the ground of non-payment of rent, one action being for the store and the other being for the apartment above. Against these the tenant filed counterclaims, one for double the amount paid in excess of the rent ceiling and one for double the value of certain minimum services refused by the landlord. In a third action, the landlord sought possession of these three rooms on the ground of "unlawful entry and detainer" by tenant.[2] The other two actions were also in relation to these three rooms adjacent to the apartment unit but seeking possession of the store and apartment by virtue of tenant's allegedly unlawful entry into these three rooms. The landlord alleged that this trespass created a nuisance and breach of the tenancy. In these three actions the tenant also filed counterclaims, seeking actual and punitive damages for his being deprived of the use of the three rooms, which he charged the landlord had taken back by force. The five cases, involving the same parties and premises, were consolidated and were tried by a jury which, as we have said, decided adversely to the landlord.

At the trial it was disclosed that the tenant had been in the premises about thirty years. The landlord Mrs. Bellmore, testified that in the beginning Baum had rented only the store, paying $70.00 a month rent, but after three or four years he also leased the apartment upstairs paying $30.00 additional, or $100.00 for both. During the depression (and before the advent of rent control) she reduced the rent, the apartment upstairs being given to the tenant free while he continued to pay $70.00 for the store. This arrangement continued between 1929 and 1947, with the lease being renewed each three years until late 1947 when Mrs. Bellmore spent some $4,500.00 on improvements for the property. Before the "improvements" were made, she and the tenant had signed two leases. By these the tenant Baum agreed to pay $100.00 a month for the store and $40.00 for the living accommodations. Mrs. Bellmore repeated that prior to these leases she was receiving $70.00 for the store alone. She insisted that she granted the tenant free use of the apartment and also allowed him the use of three other rooms at sufferance. But on cross-examination she also

---

1. A diagram of the premises submitted by both parties reveals that the upstairs hall separating the rooms is wholly above the cleaning store.

2. No action of "unlawful entry and detainer" is known to the law of this jurisdiction. There is an action described as "forcible entry and detainer," Code 1940, 11—735. For the distinction see Thurston v. Anderson, D.C.Mun.App., 40 A.2d 342.

admitted that when she told the Rent Administrator that she was getting $70.00 for the premises she meant that she was getting that rental for both the store and the apartment.

She said the two units were separate in fact, pointing out that in the beginning they had been rented separately, and that the tenant had not leased the apartment upstairs during the first three years he occupied the store. She testified that the building was always primarily a store with the housing accommodations incidental thereto, that each is heated individually rather than by a central unit and that the store has its own toilet facilities on the first floor and thus can be used independently. She admitted that prior to the remodeling there had been only one electric meter for the whole premises, and that the apartment had no kitchen facilities.[3]

With respect to the three rooms adjacent to the apartment, she testified that they were suitable only for storage purposes since they had no water facilities. She said that she had never rented them to anyone but had allowed the tenant of the apartment their use on the understanding that she could have them when she wanted them. They had never been included in any of the leases of the store or apartment. In late 1947, she took them back for herself for storage room and had them cleaned. She testified that they were vacant when she took them back except for debris.

Mrs. Bellmore also testified that she had considered selling the premises but decided not to after the tenant signed the two leases in late 1947. Thereafter, she remodeled the premises, shingling the outside and installing new show windows in the store, and a new floor; she also put in a new toilet, new hot water and gas heating systems in the apartment, and rewired the building. She also pointed out that she had originally prepared three-year leases for both the store and for the apartment. At the insistence of the tenant she changed these, however, extending the store lease to five years and shortening

the apartment lease to two years, because the tenant was primarily concerned with the store. The day after these new leases were signed the tenant applied to the Rent Administrator for a decrease in rent.

The tenant Baum testified that he never paid $100.00 a month to Mrs. Bellmore but had to her husband. He said he had continuously occupied all six rooms on the second floor, using the three rooms across the hall chiefly for storage but for a while his son had used one of them for a bedroom. He said there had never been any agreement as to the rooms but that he had to give them up in late 1947. In respect to the two leases signed in late 1947, he admitted that because he was principally interested in the store, he had the store lease extended from three to five years duration and because the housing portion was incidental, he agreed to lease that for only two years.

He insisted that he had always leased the premises as a unit, that a single roof covered the building, and that prior to the remodeling he controlled access to the entire upstairs by a door at the foot of the stairway. With respect to the improvements, he said that Mrs. Bellmore had to make repairs and that this was all the "improvements" amounted to. He said that the floor was falling in and the window frames rotting so that they would not hold the windows. He admitted that a new gas heater had been added to his bedroom and that the exterior had been re-shingled.

### The Question of Severability.

Appellant contends that she was entitled to binding instructions on the question of severability, and that the trial judge erred in submitting such issue to the jury, and also improperly instructed the jury thereon. We have previously decided two cases involving the question of severability of commercial and housing accommodations. Ridolfi v. Benton, D.C. Mun.App., 58 A.2d 723; Wayne v. Burke, D.C.Mun.App., 63 A.2d 669. In the Ridolfi case the landlord and tenant had always

---

3. The only kitchen facilities had been added by the tenant behind a partition in the back of the store. It was not disclosed whether there was water there or not.

treated the commercial and dwelling portions as separate, and we ruled that the landlord was entitled to prepare separate leases for the two portions of the premises. In the Wayne case there was a different result because the facts were different: the commercial portion was only a minor part of the building and the parties had constantly treated the building as a single unit. We pointed out also that to allow the severance of the commercial from the residential portion of the property would, under the circumstances of that case, have divested the tenant of rights specifically vested in him by the Rent Act. D.C.Code 1940, § 45—1601 et seq. Whether property is commercial and therefore free from control, or whether it is partly residential is ordinarily a question of fact. To determine such an issue, due weight must be given to such factors as whether the parties have treated the two portions as separate and distinct or as a unit; the prior leases, acts of the parties and the time over which the landlord-tenant relationship has existed; whether the commercial portion is incidental to the dwelling portion or whether the property is viewed primarily as commercial with dwelling accommodations incidental thereto; such elements as single or multiple toilet facilities, entrances, kitchens, heating systems, and gas, water and electric meters; and whether the two portions can be and have been used independently of the other. Only when all such circumstances are duly considered can the issue of severability be resolved. Because of the conflict in the facts and the conflicting inferences which might reasonably have been drawn therefrom, the trial judge was correct in submitting the issue to the jury. But no such conflict surrounded the aspect of the case which we next consider:

*The Question of Statutory Frozen Rental.*

We rule that there was basic error in submitting to the jury the question as to what the rental was on the freeze-date, because the evidence revealed no conflict on such question. Neither party asserted that on January 1, 1941, the rent was other than $70. And yet the matter was submitted to the jury which concluded that the rent on that date had been $100. The only possible basis for such finding is that prior to 1929, some twelve years before the freeze-date, the rental had been $100. But there was no contention in the trial court (and none here) that such was the rent on the freeze-date; all the evidence was that it was then $70. Appellee argues that this error was favorable to the landlord, but we do not think that this is the only interpretation which can be placed on the matter. It may be that the jury's conclusion was that on the freeze-date the rent for the housing accommodations was $30 of the total $70 being paid for the entire property. But such a conclusion was not contended for by either party or supported by any evidence in the case. Moreover, it is irreconcilable with the jury's finding that $100 was the freeze-date rental. Too, the jury may have concluded that the premises as a whole were worth but $100 a month and that such should be the ceiling. But if that is so, the finding was clearly beyond the jury's province. Leaving these various conjectures aside, we rule that the jury should have been told that the rent paid on the freeze-date was $70· per month. Hicks v. Behrend, D.C.Mun. App., 40 A.2d 78, 80. Any other approach would be contrary to the undisputed facts of the case, and contrary to law as well.

*The Counterclaims.*

Appellant contends, and we think properly, that the trial court should not have entertained the counterclaims of defendant-appellee in three of the suits— those in which possession was sought on the grounds of "unlawful entry and detainer." The rules of the trial court expressly prohibit counterclaims in this class of case. Rule 4 of the Landlord and Tenant Branch provides: "In suits in this Branch for recovery of possession of property, no counterclaim, cross claim, or claim by way of recoupment shall be set up therein, except where the basis of recovery of possession is non-payment of rent, but the exclusion of prosecution of said claims in this Branch shall be without prejudice to the prosecution of said claims in other Branches of the Court." We have held that where a tenant is sued for possession

*for non-payment of rent,* he may defend "by an equitable defense sufficient to defeat the landlord's claim for rent in whole or in part, or may defend by way of recoupment for a total or partial failure of consideration in order to avoid circuity of action." [4] Here, three of the suits were not for non-payment, and the defense by way of counterclaim sounded in tort, it being alleged that the landlord took possession of three rooms by trespass and that she "acted wantonly, maliciously and recklessly to the damage of the defendant in the amount of $3000, being $1000 actual damage and $2000 punitive damages."

Appellee points out that the landlord voiced no objection to the counterclaims until after verdict. That is true, and we by no means condone the laxity of plaintiff's counsel in the matter. But we are required to rule that the question was jurisdictional, that the trial court had no right to hear these counterclaims, and that the verdicts based thereon are void.

We have considered other errors assigned by appellant, and because they are either without merit or are not likely to arise again at the retrial of the case, we think it unnecessary to discuss them. We do mention, however, that much of appellant's criticism flows from the confusion which attended the trial of the case and the rendition of the jury's verdict. This confusion would probably have been largely avoided if the case had been submitted to the jury for special verdict, under properly drawn interrogatories, under Municipal Court Rule 45. Such method is often helpful when several issues must be submitted to a jury at one time.

Reversed and remanded with instructions to award a new trial.

4. Lalekos v. Manset, D.C.Mun.App., 47 A. 2d 617, 620, citing: Code 1940, 13—214; Smith v. O'Connor, 66 App.D.C. 367, 88 F.2d 749, and Dushane v. Benedict, 120 U.S. 630, 7 S.Ct. 696, 30 L.Ed. 810.