# FITZGERALD *v.* WILEY.

DAMAGES, WHEN TOO SPECULATIVE OR REMOTE; EQUITY PLEADING AND PRACTICE; SET-OFF AND RECOUPMENT.

1. Where a bill in equity seeks to foreclose a mortgage on certain inventions, and domestic and foreign patents to be granted therefor, damages growing out of the same transactions, sought to be recouped by the defendant by means of a cross bill, are not too remote or speculative when they consist of loss of profits by the mortgagor on the sale of a patent for one of the inventions abroad, which sale the mortgagor had negotiated at a fixed price, but which had failed of consummation by the failure of the mortgagees to perform their obligations under the mortgage.

2. *Quære,*—whether § 1563, Code D. C., providing that mutual debts and claims under contract between parties to a common-law action, or between any of several defendants and the plaintiff, etc., may be set off against each other by plea in bar, whether such debts be of the same or a different nature, or whether the claims be for liquidated debts or unliquidated damages for breach of contract,—should be construed as furnishing a rule for adoption in equity in a case where its jurisdiction is invoked by reason of certain conditions rendering the same necessary to complete relief in one proceeding.

3. The insolvency or nonresidence of a party against whom a set-off is claimed is a sufficient ground for equitable interference.

4. Damages sought to be recouped by cross bill in a proceeding in equity to foreclose a mortgage on inventions and patents to be granted therefor, against one of several persons interested in the mortgage debt, for negligence on the part of such person, a patent attorney, in not notify-

ing the mortgagor, as it was his duty to do, that taxes were due on a foreign patent, whereby the patent lapsed and a sale thereof which had been negotiated by the mortgagor was prevented, must be limited to the interest such person has in the recovery sought in the original bill.

No. 1311.    Submitted June 2, 1903.    Decided June 25, 1903.

HEARING on an appeal (specially allowed) by one of several defendants to a cross bill, from an order of the Supreme Court of the District of Columbia overruling his demurrer to the cross bill.                                              *Affirmed.*

The COURT in the opinion stated the case as follows:

This case comes up on a special appeal allowed from a decree overruling the demurrer of William T. Fitzgerald to the cross bill of John M. Wiley, one of the defendants in the original bill, filed by Harry F. Gomber, Frederick J. Dreher, Herbert Brouard, Charles L. Soyster, and Fletcher B. Miller against John M. Wiley and the American Multiplex Talking Machine Company.

That bill was filed February 27, 1902, to foreclose a mortgage of certain letters patent executed by John M. Wiley to secure the sum of $20,000.

It appears from certain exhibits filed with the bill for foreclosure: 1. That, on January 16, 1900, George W. Gomber, Harry F. Gomber, and George Bishop assigned to John M. Wiley certain inventions of improvements in talking machines, recited therein as made by George W. Gomber, in which Harry F. Gomber and George Bishop owned an undivided interest and the letters patent to be granted thereon by the United States, as well as "by all countries of the world wherever the said Wiley may elect." This was recorded in the United States Patent Office, January 29, 1900. 2. That on January 18, 1900, the said John M. Wiley conveyed all of the aforesaid inventions and letters patent to Harry F. Gomber to secure the sum of $20,000, payable in instalments of $1,000 and $3,000, as recited therein, payments to be made as they matured to W. T. Fitzgerald, of

Washington, District of Columbia, who is appointed trustee for that purpose. It was stipulated that Wiley shall be credited upon the last of the instalments recited with the amounts advanced by him to George W. Gomber and W. T. Fitzgerald prior to the date of the mortgage. 3. That the following was indorsed upon said mortgage:

"CONYNGHAM, PENN., January 22, 1900.

"The foregoing instrument is fully understood and approved by me, and I hereby authorize the said W. T. Fitzgerald to retain from said amount for his use, and as his just portion, the sum of five thousand dollars ($5,000), said amount of five thousand dollars ($5,000) being due said W. T. Fitzgerald for services rendered, this settlement being in accordance with an agreement and understanding between my father, the said George W. Gomber, when he was the owner of said inventions, and between said Fitzgerald and myself, since I have become the owner thereof.                    HARRY F. GOMBER.

"Signature of Harry F. Gomber witnessed by George W. Gomber."

The mortgage and indorsed agreement were registered in the Patent Office February 28, 1900. 4. That on July 23, 1900, said George W. Gomber executed another assignment to said Wiley of certain additional inventions of improvements in said machines. 5. That on July 24, 1900, said Wiley executed another instrument whereby the last-named inventions were included in the mortgage aforesaid. Both instruments were registered in the Patent Office on September 14 and 15, 1900, respectively.

Wiley and the Multiplex Company filed separate answers to the complainant's bill, alleging that Harry F. Gomber, claiming the forfeiture of the assignment to Wiley, had undertaken to assign the said inventions to the said Dreher, Brouard, Soyster, and Miller; that the latter were directors of the Multiplex Company, largely indebted to it, and had engaged in a fraudulent scheme to acquire the title to the inventions aforesaid; that George W. Gomber and W. T. Fitzgerald were the real parties

at interest in the controversy, the said Harry F. Gomber being but a nominal party thereto; that a large credit was due Wiley on the mortgage for advances made to George W. Gomber, of which an account was prayed; that Wiley through the fraudulent conduct of George W. Gomber and Fitzgerald, had lost $10,000 by failure to negotiate the sale of the patents in France, and $90,000 by similar failure of sale of the patents to be granted in England and other countries, and the same were prayed to be taken as set-off to the claims, etc. Afterwards the complainants amended the original bill and made George W. Gomber and William T. Fitzgerald parties defendant. Thereafter Wiley and the Multiplex Company filed a joint cross bill repeating the charges of the said answers and praying to set off the damages as therein alleged. A demurrer to this cross bill was sustained on the ground that the Multiplex Company had no interest in the said claim for damages, and that the same was multifarious.

Upon leave granted the separate cross bill of said Wiley was then filed, in which the answers and cross bill aforesaid and the action upon the latter were recited.

This cross bill alleges that George W. Gomber bound him himself to co-operate with Wiley in procuring patents throughout the countries of the world, and to execute any and all papers necessary in relation therewith; that William T. Fitzgerald was and is the owner of a one-fourth interest in the mortgage given by Wiley, the consideration for which was, in part, services to be rendered by him in securing letters patent in foreign countries; that he and George W. Gomber are the real owners of the mortgage, the name of Harry F. Gomber having been inserted therein as mortgagee by said Fitzgerald without the knowledge of Wiley and at the instance of George W. Gomber, because the latter was financially embarrassed and desired to hinder, delay, and defraud his creditors; that said Harry F. Gomber is a young man without means, working for his father, George W. Gomber, for daily wages, and has never had anything to do with the transactions, and never claimed to be the owner in fact until the filing of the bill by him and his co-complainants.

It further alleges that, pursuant to the purposes of the assignment and agreement between the parties, said Wiley proceeded with the prosecution of the applications for letters patent, employing Fitzgerald as his attorney and representative in these matters, and the defendant George W. Gomber, to make experiments, improvements, etc., in the matter of the said inventions; that Wiley caused applications for patents to be made in England, France, Germany, and other countries, the same being done through said Fitzgerald as his attorney, who acted pursuant to the agreement aforesaid, whereby he had received his one-fourth interest in said mortgage; that through the negligence and default of Fitzgerald in failing to notify Wiley of the taxes on patents issued by the French government, in consequence of which the patents there lapsed and were lost, Wiley lost the sum of 50,000 francs—about $10,000,—for which sum he had negotiated a sale of said French patents; that Fitzgerald had timely notice of the said taxes in ample time to enable him to notify Wiley and prevent the lapse aforesaid, and enable the latter to complete the sale aforesaid, which failed because of the lapse of the patents, whereby he sustained damages in the sum of about $10,000.

It is further alleged that letters patent were obtained in England, Hungary, Switzerland, Belgium, Italy, Spain, the Argentine Republic, and Brazil, and the said George W. Gomber executed an assignment thereof to said Wiley, which was in the possession of Fitzgerald as attorney aforesaid; that Wiley went to England with the approval of Gomber and Fitzgerald to negotiate the sale of said patents, although strict compliance had not been made with the terms of the mortgage requiring payments to be made in certain instalments, because the said Gomber had failed to complete the necessary machines within the time promised by him; that by special agreement, therefore, strict performance was waived; that Wiley negotiated a sale of the English and other foreign patent rights for the sum of 18,-000 pounds sterling, and by cable and mail requested Fitzgerald to forward the assignment aforesaid in order that he might complete his said sale, because the patents had been issued in the

name of Gomber and the assignment was necessary to make: title; that Fitzgerald failed to forward the said assignment,. asserting that he had lost it, or sent it to Gomber for transmis- sion to Wiley; that Wiley urged the execution and transmission: of another instrument, if the original had been lost, which Fitz- gerald failed to do, alleging that Gomber refused to execute the: same; that this conduct of Fitzgerald and Gomber was in pur- suance of a scheme to defraud Wiley; and that by reason of said misconduct and default the said Wiley was unable to consum- mate the said sale, and was damaged to the extent of said pur- chase money of 18,000 pounds sterling, or about $90,000.

It is further alleged that after learning the success attending Wiley's negotiations aforesaid, and the consequent great en- hancement of the value of the said inventions, the said Fitzger- ald, George W. Gomber, Harry F. Gomber, and the said Dreher,. Brouard, Soyster, and Miller (all of whom save Harry F. Gom- ber and Miller were directors of and trustees for the Multiplex Company), entered into a scheme to· acquire said patents for themselves which scheme contemplated the assignment by Harry F. Gomber of the inventions aforesaid to Dreher, Brouard, Soy- ster, and Miller, in secret trust for themselves and Fitzgerald and George W. Gomber, under the pretense that the title had re- verted to said Harry F. Gomber because of the failure of Wiley: to make the payments in strict compliance with the terms of said mortgage, notwithstanding that no demand for such com- pliance had ever been made, and that George W. Gomber and Fitzgerald had failed to perform their obligation; that this, scheme was originated by and executed under the supervision and advice of Fitzgerald, while he was still in the employ and acting as the attorney of Wiley and the Multiplex Company, and while said Dreher, Brouard, and Soyster were directors of said company and bound in good conscience not to acquire any ad-- vantage at its expense, etc.

It further alleges that Wiley is entitled to have George W. Gomber specifically perform his contract by executing. and de-- livering all necessary papers, powers, etc., necessary to secure· to him the foreign patents aforesaid; and to have an account,

stated between himself and Gomber and Fitzgerald, and others who may appear to be interested in the mortgage, to ascertain how much is still due of the said sum of $20,000; that upon such accounting he is entitled to have an allowance against George W. Gomber and Fitzgerald for the pecuniary loss sustained by him in the matter of the sale of the English and other foreign patents. It is further alleged that George W. Gomber, Fitzgerald, and Harry F. Gomber are insolvent; that Harry F. Gomber has no real interest in the mortgage; that Dreher, Brouard, Soyster, and Miller have no real interest in the mortgage; and that upon the accounting called for, the unpaid balance of the mortgage debt will be found to have been more than covered by the indebtedness to Wiley of Fitzgerald and George W. Gomber, the real owners of the mortgage; but if the result of accounting should be otherwise, he is desirous of paying any balance of said mortgage debt found to be due.

The prayers of the cross bill follow the allegations aforesaid. This cross bill was demurred to by Fitzgerald alone, on the ground that its allegations do not entitle the complainant to any relief in equity.

It is proper to remark that the original bill and answers have been omitted from the transcript of the record by agreement of the parties. Hence the connection between Wiley and the American Multiplex Talking Machine Company—referred to above as the Multiplex Company—is not made to appear, beyond the fact that he was one of the stockholders therein. Presumably, Wiley is under contract to assign his interest in the inventions to said company.

*Mr. A. A. Birney,* for the appellant:

1. A court of equity has no jurisdiction to try claims for unliquidated damages. Such claims must be tried only at law.

2. The damages alleged are such that they would not be recoverable even at law. Such a demand as either of these was not the subject of set-off, even in a common-law action. *Winchester* v. *Hackley,* 2 Cranch (S. Ct.) 342; *Montague* v. *Boston, etc.,*

*Iron Works,* 97 Mass. 502.   While the Code extends the right of set-off to unliquidated damages for breach of contract, this extension is in very terms confined *to common-law actions* (Code, § 1563).

Courts of equity have always refused to try claims for unliquidated damages; indeed, they have refused to allow damages in any case where there was not a fixed basis for *calculated,* as distinguished from *estimated, damages.   Livingston* v. *Livingston,* 4 Johns. Ch. 287, 293.   In the case cited the original bill was for an account of rents received; the cross demand was for damages for breach of covenants of the complainant, and was disallowed.   To the same point are the following decisions: *Tribble* v. *Taul,* 7 B. Mon. (Ky.) 455; *Murray* v. *Toland,* 3 Johns. Ch. 569; *Smith* v. *Washington Gas Light Co.* 31 Md. 12; *Wade* v. *Wade,* 12 Ill. 89; *Davis* v. *Am. Life Ins. & Trust Co.* 4 Edw. Ch. 308.   See also Waterman on Set-Off, §§ 420 *et seq.; Holbrook* v. *Receivers of Am. Fire Ins. Co.* 6 Paige, 223, 225; *Palys* v. *Jewett,* 5 Stew. Eq. 305; *Sanford* v. *Lyon,* 37 N. J. Eq. 94, 101.

3.  Such claims for damages as are asserted in this cross bill have not been allowed, even on a direct action, and for this reason the demurrer should have been sustained.   *Railroad Co.* v. *Car Co.* 5 App. D. C. 524; *Howard* v. *Stillwell, etc., Co.* 138 U. S. 199; Notes on U. S. Reports, vol. 11, p. 1152, and cases cited. There is no standard by which to compute such damages.   They are consequential, and not direct; shadowy, uncertain, and speculative, and, therefore, not allowable in any tribunal.   *Memphis* v. *Brown,* 20 Wall. 289; *U. S.* v. *McKee,* 97 U. S. 233; *Watson* v. *Sutherland,* 5 Wall. 74, 79; *Vance* v. *Vandercook Co.* 170 U. S. 468, 480.

*Mr. J. J. Darlington* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

1.  The counterclaim as alleged in the cross bill arises out of the transactions between Wiley and the two Gombers and Fitz-

gerald, relating to the purchase and assignment of the several inventions, and obtaining patents thereon in foreign countries, of which the mortgage forms a part.    It is founded on the failure of those parties to perform their cross-obligations to Wiley, for which the mortgage executed by him is the chief consideration.    Under the allegations of the bill, which must be taken as true upon the demurrer, these damages are not open to the objection of remoteness or uncertainty.    The profits lost by the prevention of sales of patents abroad are not of the uncertain, speculative character for the recovery of which the law affords no remedy.

It is alleged that a bona fide sale was made of certain patents at a fixed price, the consummation of which, and the receipt of the money, were alone prevented by the failure of the other contracting parties to perform their obligations.    The case is the same as the loss of a contracted sale of any other kind of property, the consummation of which has been prevented by the refusal of the defendant to make delivery or perfect title in accordance with the terms of a previous obligation, on the faith of which the plaintiff had contracted with the third party.

2. Were this, therefore, an action at law against Wiley for the failure to perform the obligations of his contract for the payment of the money according to the terms of the mortgage, he could recoup or set off the damages alleged by virtue of the provisions of § 1563 of the Code, which reads as follows:

"Mutual debts and claims under contract between the parties to a common-law action [or between any of the several defendants and the plaintiff], or between one party and the testator or intestate of the other, or between the testators or intestates of both parties, may be set off against each other by plea in bar, whether said debts or claims be of the same or a different nature or degree, and whether the claims be for liquidated debts or unliquidated damages for breach of contract, and if either debt be in the form of the penalty of a bond, the exact sum to be set off shall be stated in the plea."

By further allegation of the cross bill, that must be taken as true, the assignment of the mortgage debt is colorable, and

George W. Gomber and Fitzgerald remain the substantial own-
ers of the claim arising thereunder, and are the real plaintiffs;
but were it otherwise, the counterclaim would nevertheless be
maintainable against the demands of the assignees under an-
other section of the Code (1565).

3. Foreclosure of the mortgage being desired, the suit was
filed in equity by Harry F. Gomber and his assignees, Dreher
and others, omitting Fitzgerald, who is not only the owner of
an undivided interest therein, but is also, by the express terms
of the instrument, made the trustee for the receipt of the money
secured thereby, and George W. Gomber, the inventor who
furnished the consideration.    These, as we have seen, were
made parties defendant, by amendment of the original bill, after
the answer of Wiley thereto was filed in which their interest was
alleged.

The provision of the Code, heretofore recited, would seem by
its terms to be limited to actions at law, and we do not deem it
necessary, under the allegations of the cross bill, to determine
whether it should not be considered as furnishing a rule for
adoption in equity in a case where its jurisdiction is invoked by
reason of certain conditions rendering the same necessary to
complete relief in one proceeding.

In our opinion, the allegations of the cross bill bring the
present case within the rule laid down by the Supreme Court of
the United States in *North Chicago Rolling Mill Co.* v. *St. Louis
Ore & Steel Co.,* 152 U. S. 596, 615, 38 L. ed. 565, 572, 14 Sup.
Ct. Rep. 710, 715.

Briefly stated, that was a case growing out of a contract made
between the two companies relating to the manufacture and de-
livery of certain iron rails by the former to the latter.    During
the performance of the contract, the St. Louis company passed
temporarily into the hands of a receiver who declined to receive
any more deliveries under the contract.    On the day that the
receiver was appointed in Missouri, certain creditors of the St.
Louis company instituted attachment suits in Illinois and ob-
tained writs of garnishment against the Chicago company.
Answering thereto, the Chicago company admitted an indebted-

ness to the St. Louis company, but set up certain counterclaims by way of set-off thereto, one of which consisted of damages sustained by reason of the failure of the St. Louis company to receive deliveries of rails in pursuance of the terms of the contract. This counterclaim was disallowed by the court because, being for unliquidated damages, it could not properly be set off at law. The garnishment proceeding, under the laws of Illinois, was in the name of the St. Louis company, and judgment was rendered in its name against the Chicago company for the balance of its indebtedness, after allowing certain counterclaims that were entertained. The Chicago company, having obtained a stay of execution, filed its bill against the St. Louis company and the garnishment creditors, setting out the contract and the damages sustained by it through non-performance, and after reciting the proceedings and alleging the insolvency and nonresidence of the St. Louis company, prayed to have its damages ascertained and then set off against the judgments in the attachment suits before mentioned.

The circuit court, holding that the claim for unliquidated damages had no connection with the debt under which the Chicago company had been held as garnishee, dismissed the bill.

That decree was reversed on appeal. In delivering the opinion of the court Mr. Justice Jackson said: "That it sustained damages to the extent of the difference between the contract and the market price of steel rails is clear beyond all controversy. The liability of the St. Louis Company for these damages is equally clear, but the amount thereof being unliquidated could not properly be set off in the attachment proceeding at law. Under these circumstances and conditions, has the Chicago company any right to relief in equity by way of equitable set-off ? Would it be just and equitable to compel the garnishee to pay its indebtedness to the St. Louis company for the benefit of a stranger, and then be left to either lose its valid claim for damages, or follow its nonresident insolvent debtor into another jurisdiction in the effort, more or less experimental and expensive, to collect such claim ? * * * Cross-demands and counterclaims, whether arising out of the

same or wholly disconnected transactions, and whether liquidated or unliquidated, may be enforced by way of set-off whenever the circumstances are such as to warrant the interference of equity to prevent wrong and injustice. * * * The adjustment of demands by counterclaim or set-off, rather than by independent suit, is favored and encouraged by the law to avoid circuity of action and injustice. *Florida R. Co.* v. *Smith,* 21 Wall. 255, 22 L. ed. 513.

"By the decided weight of authority it is settled that the insolvency of the party against whom the set-off is claimed is a sufficient ground for equitable interference. * * * In addition to insolvency, it is held by many well-considered decisions, including those of Illinois, that the non-residence of the party against whom the set-off is asserted is good ground for equitable relief." ·

In the case at bar both of the Gombers are shown to be residents of the State of Pennsylvania. Fitzgerald alone is a resident of the District of Columbia, but he, as well as the Gombers, is alleged to be insolvent.

Moreover, the use of the name of Harry F. Gomber, as the payee in the mortgage, and the assignment to Dreher and other complainants joined with him in the original bill, are alleged to have been made with fraudulent intent.

4. What has been said applies directly to the counterclaim based on the alleged loss of the sale of the British and other foreign patents; but that relating to the loss of the French patent stands upon a somewhat different ground. It is pleaded against Fitzgerald alone as due to his failure to perform his duty as the attorney charged with obtaining that patent. It does not appear that Fitzgerald's interest in the mortgage was in consideration of future services to be rendered in obtaining the foreign patents, and his negligence, causing loss, may not, therefore, be directly connected with the other transactions, but the result of the breach of a subsequent contract made with him for the continuation of his services. As the Gombers had no connection with this particular transaction, the damage caused by Fitzgerald's negligence cannot be set off against them, but

must be limited to the interest which the latter has in the re-covery sought in the original bill. His alleged insolvency brings him within the rule of the case before cited.

For the reasons given the decree overruling the demurrer to the cross bill will be affirmed with costs, and the cause will be remanded for further proceedings in due course. It is so ordered.

*Affirmed.*