Statement of the case.

## J. E. HUGHES *v.* R. P. LAKE.

1. ATTACHMENT. *Fraudulent contracting of debt. Insolvent bank receiving deposit. Effect of § 2814, Code of 1880.*

   L., a banker, having failed in business and made an assignment, H., one of his depositors, sued out an attachment against him on the ground that the debt due the plaintiff was "fraudulently contracted." On the trial of the issue joined to test the ground of the attachment the plaintiff adduced evidence tending to show that L. knew at the time he received plaintiff's deposit that the bank was insolvent. Under § 2814 of the code, which makes it a felony if any officer, agent, or employee of a bank " receive any deposit, knowing or having good reason to believe that the establishment is insolvent, without informing the depositor of such condition," the plaintiff asked an instruction to the effect that if L. was guilty of violating the statute in receiving H.'s deposit, then he fraudulently contracted the debt therefor. The court refused to give the instruction as asked, but modified it so as to charge that such guilt of L., if it existed, might be considered in determining whether the debt was fraudulently contracted. *Held,* that the action of the court below was correct.

2. SAME. *Guilt in receiving deposit under § 2814, Code of 1880. Fraud in contracting debt under § 2415, Code of 1880.*

   The statute above referred to, § 2814 of the Code of 1880, was intended for the protection of the public, and guilt under it depends on the existence of the facts recited in it, without regard to the intent or purpose of the person charged with the violation thereof. But to sustain an attachment on the ground that the defendant " fraudulently contracted the debt" sued for, it must be shown that in contracting such debt he *intended* to defraud the plaintiff.

APPEAL from the Circuit Court of Grenada County.

HON. A. T. ROANE, Judge.

In 1882 Lake Brothers, a firm composed of W. S. and R. P. Lake, were doing a general banking business in the city of Grenada. In July or August, 1882, W. S. Lake drew several irregular and unauthorized drafts on the correspondents of this bank, which drafts were cashed and invested by him in cotton futures for his individual benefit. As soon as this was discovered by R. P. Lake he took entire charge of the bank, and notified the several correspondents of the bank not to honor any further drafts drawn by W. S. Lake for Lake Brothers. About this time a partnership was

formed by W. S. Lake and F. R. Austin, under the firm-name of Lake & Austin, for the purpose of carrying on a mercantile business. They continued in business until the 2d of October, 1883, when they made an assignment. On the 1st of October, 1883, the day before the assignment of Lake & Austin, W. S. Lake transferred all his interest in the banking business of Lake Brothers to R. P. Lake.

In June, 1883, J. E. Hughes placed a deposit in the bank. In October, 1883, immediately after the failure of Lake & Austin, a heavy run commenced on Lake's bank. Thereupon Hughes went to see R. P. Lake about his deposit. Hughes testifies that Lake assured him that the bank was perfectly solvent; that it was "as solid as the Bank of England;" that "if the worst came to the worst, he [Lake] would treat the [Hughes] deposit as a special deposit." Lake admitted that he assured Hughes of the solvency of the bank at that time, and testified that he so believed at the time; he said he did not remember having made the other statement. Upon these assurances Hughes left his money with the bank. On the 18th of January, 1884, the bank made an assignment, and Hughes was not made even a preferred creditor. Thereupon Hughes sued out an attachment against R. P. Lake, alleging, among other grounds, that the debt was fraudulently contracted. On the trial of the issue joined to test the ground of the attachment, there was evidence which tended to show that at the time the deposit was made, and also when the above assurances on account of which the money was left were made, the bank was insolvent, and that Lake knew it was insolvent.

The plaintiff in his first instruction asked the court to instruct the jury as follows: "If the jury believe from the evidence that at the time of the contracting of the debt here attached for Lake knew that he was insolvent, or had good reason so to believe, and did not inform plaintiff of the condition of the bank, then the said debt was fraudulently contracted, and they will find for the plaintiff." The court modified this instruction so as to read: "If the jury believe from the evidence that at the time of the contracting of the debt here attached for Lake knew that he was insolvent, or

had good reason so to believe, and did not inform plaintiff of the condition of the bank, then *these are circumstances which the jury may consider in determining whether said debt was fraudulently contracted or not,* and they will find for the plaintiff, *if they believe from these circumstances, together with all the proof in the case, that the debt was fraudulently contracted."*

Section 2814, Code of 1880, is as follows: "If the president, manager, cashier, teller, assistant clerk, or other employee or agent of any bank or broker's office or establishment, conducting the business of receiving on deposit the money or other valuable things of other persons * * * · * shall receive any deposit knowing or having good reason to believe that the establishment is insolvent, without informing the depositor of such condition, on conviction he shall be imprisoned in the penitentiary not longer than five years."

The jury found for the defendant in attachment. The plaintiff appealed.

*W. H. Fitzgerald,* for the appellant.

The first instruction asked by the plaintiff squarely presents the question, Does a violation of § 2814, like a violation of § 2811, constitute a fraudulent contracting of the debt under the eighth ground of attachment specified in § 2415, Code of 1880 ? It is impossible for me to see why one is a fraud and the other not. But the court below said, in substance, " The supreme court, in *Marqueze* v. *Sontheimer,* 59 Miss. 430, say, ' A purpose to defraud is necessary,' etc., and the receiving of a deposit, knowing or having good reason to believe that the establishment is insolvent, without informing the depositor of such condition, is made a crime without regard to any intent of the banker to defraud the depositor. The fact of receiving the deposit, being insolvent, etc., constitutes the crime, and the intention to defraud the depositor does not enter into it." The court did not, of course, say the crime could be committed without the criminal intent, but that the crime denounced by the code could be completed under the law without any intention on the part of the banker to defraud the depositor. In other words, the banker might have received the deposit in the hope that he would be able to " pull through " and make the

deposit good, and that, therefore, it requires more evidence than sufficient to convict of the crime to show the intention of the banker to defraud the depositor.

That is exactly what the instruction, as modified by the court, distinctly says. The instruction as asked proceeds upon the theory that the requisite evidence to convict of the crime establishes the intent to defraud, and that nothing the banker can say, who alone knows of his mental emotions pending the transaction, can have a feather's weight, touching his *actual* purpose and intention against the facts which *completely* prove the crime. "The law does not concern itself about the private or secret motives which may influence the debtor." Wait on Fraudulent Conveyances, § 196. "The intent or intention is regarded as an emotion of the mind shown by facts and declarations, and, as facts speak louder than words, if a party is guilty of an act which defrauds another, his declarations that he did not by the act intend to defraud is weighed down by the evidence of his own act." Ib., § 8.

Whether the intent to defraud the depositor is a legal conclusion upon complete proof of the commission of the crime denounced by the law, or whether this complete proof is not susceptible of rebuttal, is immaterial. The same end is reached. Wait on Fraudulent Conveyances, §§ 9, 10. The province of the jury is not sought to be invaded by the instruction asked. The court is not asked to consider the facts except as they are found to be by the jury.

*A. H. Whitfield,* on the same side, filed a brief on the facts of the case.

*Slack & Longstreet,* for the appellee.

The refusal of the court to grant the instruction as asked, declaring the effect of any possible liability of defendant to conviction under § 2814 of the Code of 1880, is assigned for error. The instruction was properly refused as asked. The offense defined and declared by § 2814 is *made* a *crime* by statute. It does not belong to that class of offenses which are evil in themselves. It is *mala prohibitum.* Were it not for the statute there would be no legal wrong in such an act. Whatever may be the moral wrong

in such conduct, such an act is no part of the contraction of the debt—the criminal liability and the obligation of the debt are two entirely different and distinct things, and the one is not of the other, essentially and inherently. Not denying here, then, for the argument's sake, that Lake was insolvent knowingly at the time of the contraction of the debt, the statute, § 2814, alone, in the absence of a fraudulent intent, or if an honest intent existed, would not make the contraction of the debt a fraudulent contraction of the debt in the sense in which the statute, § 2415, declares it as a ground of attachment.

*W. C. McLean*, on the same side.

To the position of appellant there are many answers. First, § 2814 has nothing to do with the attachment laws; was not designed to limit or to broaden those laws, but was designed and intended to protect the depositors of banks, *not* by giving to them any *additional civil remedies*, but by making it a felony for a banker, under certain circumstances, to receive a deposit without informing the depositor of the true condition, and *thereby* to prevent deposits from being made in insolvent institutions; the object was not to give *additional remedies* to the depositor, but to give him information of the condition of the bank into which he was about to deposit his money.

Second, § 2415 of the code prescribes all of the grounds for attachment, and neither of these grounds will justify the giving of the instruction asked for by plaintiff. The eighth ground of attachment is that " he fraudulently contracted the debt ;" no debt can be fraudulently contracted unless he had the purpose, the intent, to defraud. The president of a bank may know that his bank is insolvent, he may receive a deposit without informing the depositor of the condition of the bank, and yet not fraudulently contract the debt, because he may in all good faith intend to pay that debt. The statute, § 2814, does not say that if the officer of a bank receives the deposit without informing the depositor of the insolvent condition of the bank that he shall be obtaining money under false pretense, nor that he thereby fraudulently contracted the debt, nor that he is thereby guilty of any fraud ;

but it merely says that he shall upon conviction be imprisoned in the penitentiary. It will not do to say that the legislature has the power to define what acts shall constitute fraud · (this it is competent to do), and then to further say that the legislature intended that the doing of the things set forth in the statute should constitute fraud ; because, in the absence of an explicit declaration to that effect, it is not to be presumed that the legislature intended to abrogate the settled rule of law defining what is fraud. In order for the debt to be fraudulently contracted it is not sufficient in law that it be a *constructive* fraud, but there must be the intent, the purpose, to defraud, as was held in 59 Miss. 438.

The plaintiff's position is that because Lake did a thing for the doing of which he can be sent to the penitentiary, therefore he fraudulently contracted the debt, and hence the attachment should be sustained. A person may do many things for which he may be sent to the penitentiary, and yet for the doing of those things not subject himself and his property to attachment.

CAMPBELL, J., delivered the opinion of the court.

The first instruction asked by the plaintiff was properly refused, and was correctly modified by the court. It is true that one may be guilty, and sent to the penitentiary, under § 2814 of the code, without having entertained the fraudulent purpose necessary to sustain an attachment. Guilt, under § 2814, depends on the facts recited in it, and not upon *intent* or purpose. The object of the statute is to protect the confiding public from the victimization apt to result from depositing in an insolvent establishment, and it seeks to give protection by denouncing its penalty against him who receives a deposit, knowing, or having good reason to believe, that the establishment is insolvent, without informing the depositor of such condition. Receiving a deposit in such circumstances constitutes the crime, no matter what may be the purpose or hope of the person receiving it. He may think all will be well, and that his insolvent condition will never be known, and that he will achieve success by the use of his credit, and his purpose may be to act honestly and pay all depositors, but if he receives a deposit, know-

ing or having reason to believe that insolvency exists, he is guilty of a felony and cannot escape the just consequences of his crime because of his hopes and purposes. The legislature has determined that it is dangerous to the community for an insolvent bank to receive deposits, because of the probable result, and in order to prevent the evil has declared it felony for any person to receive deposits into an insolvent establishment without informing the depositor of such condition. No professed or really existing honesty of purpose will relieve against the crime, which consists in doing what is forbidden, regardless of motive. If the bank is insolvent, dare not to receive a deposit from an unsuspecting person, but tell him of the insolvent condition, that he may foresee the evil and avoid it.

Was the bank insolvent? Did the person receiving the deposit know it, or have good reason to believe it? If so, he is guilty under § 2814 of the code. But when the inquiry is whether the debt was fraudulently contracted within the meaning of the attachment law, reference must be had to the purpose to defraud, for to sustain an attachment on the ground that the debt was fraudulently contracted, it must be shown that the debtor intended to defraud the creditor. It is impossible to conceive of fraudulently contracting a debt without ascribing to the debtor the purpose to defraud. We do not say that in order to constitute a fraudulent contracting of a debt the debtor must at the time *intend not to pay the debt* as promised. That is not correct, for although the debtor may at the time intend to pay, and may think he will be able to do so, he may fraudulently contract the debt by representations and devices whereby to obtain credit.

None of the errors complained of are well taken, in our opinion. The court properly refused to instruct the jury to find for the plaintiff, and the verdict is not so manifestly wrong as to justify its being disturbed.

We confine our remarks to the errors particularly assigned and argued by counsel, and would not be understood as deciding any other question which the record may present.

*Affirmed.*