## CROOKE *v.* DEAS & DUKE.[*]

(Division A.   Feb. 7, 1927.)

[111 So. 293.   No. 26016.]

1. APPEAL AND ERROR. *Appeal is authorized from judgment in attachment and garnishment of less than fifty dollars, where counterclaim for damages after deducting judgment exceeded fifty dollars (Hemingway's Code, sections 66, 162, 163).*

Under Hemingway's Code, section 66 (Code 1906, section 86), providing for appeals from court of justice of the peace to circuit court, and to supreme court in controversies exceeding fifty dollars, appeal is authorized from judgment in attachment and garnishment proceeding for less than fifty dollars, where counterclaim, interposed in accordance with sections 162, 163 (Code 1906, sections 170, 171), for damages, after deducting amount of judgment, exceeded fifty dollars.

2. ATTACHMENT. *Defendant in attachment suit may file counterclaim for actual damages and attorney's fee (Hemingway's Code, sections 162, 163).*

Hemingway's Code, sections 162, 163 (Code 1906, sections 170, 171), *held* to authorize defendant in attachment suit on the trial of the attachment issue, made up to file a counterclaim for actual damages and attorney's fee.

3. ATTACHMENT. *Grounds of attachment, authorized by statute, must be proven (Hemingway's Code, section 125).*

Grounds of attachment, under Hemingway's Code, section 125 (Code 1906, section 133), must be proven, since there is no right of attachment simply on ground that debtor owes debt and obstinately neglects to pay it.

4. ATTACHMENT. *Evidence held insufficient to sustain attachment (Hemingway's Code, section 125).*

   Evidence in attachment proceeding, under Hemingway's Code, section 125 (Code 1906, section 133), *held* insufficient to sustain attachment.

5. ATTACHMENT. *There must be both concealment and unjust refusal to apply to debts to justify attachment (Hemingway's Code, section 125).*

   In order to sustain attachment under Hemingway's Code, section 125 (Code 1906, section 133), there must be both concealment and unjust refusal of debtor to apply to payment of his debts.

6. ATTACHMENT. *Intent to defraud must exist when debt is created for attachment on such ground.*

   An intent to defraud must exist at time debt was created, in order to authorize attachment on that ground.

---

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 417, n. 85; p. 418, n. 87; Attachment, 6CJ, p. 42, n. 9; p. 69, n. 91 New; p. 70, n. 96, 1; p. 134, n. 25; p. 483, n. 66; p. 506, n. 89; p. 534, n. 35; p. 543, n. 1. As to necessity of proving grounds for attachment, see 2 R. C. L. 832.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

Attachment and garnishment proceeding by Deas & Duke against J. G. Crooke, wherein the New Orleans & Northeastern Railroad Company was garnishee. Judgment for plaintiff and sustaining the attachment, and defendant appeals. Reversed and remanded.

*Currie, Smith, Stevens & Currie,* for appellant.

There is not a single word of testimony in this entire record to substantiate any ground for attachment. The record shows conclusively and without contradiction that the only property or income of the defendant was such money as he received from the railroad company. The plaintiffs could not and did not undertake to prove that the defendant had any property or rights in action which he concealed or unjustly refused to apply to the

payment of his debts. *Roach et al.* v. *Brannon,* 57 Miss. 490.

If the record here showed, as it certainly does not, that the defendant was a spendthrift and gave his money away, still plaintiffs would have had no ground for attachment. The second allegation in plaintiff's affidavit is "that he has converted or is about to convert his property into money or evidences of debt with intent to place it beyond the reach of his creditors." We are unable to find a single word of testimony that would even inferentially support this allegation of the affidavit. The opinion in *Thames* v. *Sharbrough,* 27 So. 834, is short but to the point. The facts in that case were far less favorable to the defendant than the facts in the present case.

The last ground for attachment relied upon by plaintiffs and alleged in their affidavit was "that he fraudulently contracted the debt or incurred the obligations for which suit has been or is about to be brought." We have searched the record carefully and are unable to find a line of testimony that would substantiate this charge, directly or indirectly.

The burden was upon the plaintiffs to prove by a preponderance of the evidence that the defendant intended at the time he made the purchase to defraud the plaintiffs. The plaintiffs could not and did not attempt to make any such proof. *Hughes* v. *Lake,* 63 Miss. 552.

We are unable, after a careful examination of the authorities to find any case as weak as that of the plaintiffs here. We, therefore, submit that the motion made by defendant for a directed verdict at the close of plaintiffs' case should have been sustained and the peremptory instruction requested by the defendant at the close of the testimony should have been granted. *Thames* v. *Sharbrough,* 27 So. 834; *Terry* v. *Jolly,* 75 So. 756. The defendant was entitled to a directed verdict upon the attachment issue, and the cause should be reversed and remanded in order that a jury may assess his damages.

*F. M. Hunt,* for appellee.

The entire evidence in the case shows that there is very conclusive proof to sustain the attachment. The jury was certainly justified in believing that the debt was fraudulently made for the reason that the appellant never intended in good faith to pay the debt. Either fraudulent concealment of his assets or an unjust refusal to pay this debt is sufficient to sustain the attachment. It is very evident that the appellant is endeavoring to convert into cash the indebtedness of the railroad company to him, and it is his intention when he does so to place it beyond the reach of his creditors.

Counsel for appellant cite only four cases in their brief, none of which sustains their contentions. On the other hand, in *Dunlap* v. *Fox,* 2 So. 169, the rule is laid down by the court that the fact of the insolvency of the debtor at the time he contracted the debt may be considered by the jury on the question as to whether or not the debt was fraudulently contracted. In the case at bar if the defendant was not abundantly able to pay the debt at or before the time the suit was filed, he was certainly insolvent at the time the debt was contracted and he must have had no expectation of being able to pay it when due.

In *Marks* v. *Stoner,* 11 So. 186, this court held that the action to recover a debt, aided by an attachment, on the ground that the debt was fraudulently contracted by defendant, the court erred in instructing the jury that the evidence must show that defendant intended never to pay the debt at the time it was made and that such intention must be presumed not to have existed until proved. The court took the position that this instruction asked by the defendant was too favorable to defendant, and reversed the judgment of the court below in favor of the defendant, awarding a new trial.

Brief by *Currie, Smith, Stevens & Currie,* for appellant, in response to questions by the court.

Under section 66, Hemingway's Code (section 86, Code of 1906) or otherwise, has the supreme court jurisdiction of this appeal? See section 162, Hemingway's Code (section 170, Code of 1906) with respect to the defendant's plea in abatement. We call the court's attention to the mandatory language of the statute to the effect that "the court *shall* order a jury to be impaneled to try the issue; and if the jury shall find for the defendant, it *shall* assess damages against the plaintiff for wrongfully suing out the same." See the concluding language in section 66, Hemingway's Code (section 86, Code of 1906), which is a portion of the section governing appeals to this court in causes originating in the justice court. We call especial attention to the language of this statute providing that "where the amount in controversy exceeds the sum of fifty dollars, *either* party shall be entitled to an appeal to the supreme court, as in cases originating in the circuit court."

It was the manifest intention of the legislature to give every litigant the right to have his claim passed upon by the supreme court, whether he be plaintiff or defendant, provided only that the amount of his claim exceeded the sum of fifty dollars. Upon the question of the right of the appellant to appeal where he was the defendant in the lower court and where he complains of a judgment disallowing his claim, see 3 C. J., section 221, page 417 and section 222, pages 417-18.

In further support of our contentions, we call the attention of the court to the following authorities holding that a claim for damages introduced by a defendant is, as to him, the amount in controversy. 3 Am. and Eng. Ency. of Law and Practice, section B, pages 903-04; *Dunshane et al., plaintiffs in error,* v. *Joseph Benedict,* 30 L. Ed. 810; *Ryan, plaintiff in error,* v. *Bindley,* 17 L. Ed. 559-60; *Sire, plaintiff in error,* v. *Ellithorpe Air*

*Brake Co.,* 34 L. Ed. 801-03; *Elias Block & Sons, plaintiffs in error,* v. *Darling,* 35 L. Ed. 476-78; *Buckstaff et al. plaintiffs in error,* v. *Russell & Co.,* 38 L. Ed. 292-97.

Assuming that the plaintiffs had a right to off-set their demand against damages of the defendant, still the amount for which the appellant should have obtained judgment, if able to substantiate his claim for damages, would be one hundred sixty-one dollars and eighty cents. It is, therefore, apparent that this court has jurisdiction of the appeal now before it.

Additional brief of *F. M. Hunt,* for appellee.

The statute, section 66, Hemingway's Code (section 88, Code of 1906), provides that in a case arising in the justice court the parties shall have a right to appeal if the amount in controversy exceeds the sum of fifty dollars. It is only by virtue of this section that any parties can appeal to the supreme court from the judgment of the circuit court in a case originating in the justice court. This point is well settled and it has often been so decided by this court.

The amount in controversy is the amount sued for by appellee, the plaintiff in the court below, which is only thirty-eight dollars and twenty cents. The claim filed by appellant is not the amount in controversy, but is the sum asked for carrying on the controversy. It is certainly no more a part of the controversy than the court costs or interest or the ten per cent damages allowed on appeal.

It has been held by this court in several cases that no costs, no interest, no statutory damages could be added to the principal to increase the amount in controversy in determining the right to appeal to this court, and the language of the various decisions goes to indicate that it was the opinion of this court that a restricted interpretation should be placed on the expression "the amount in controversy." *N. O. J. & G. N. R. R. Co.* v. *Williams,* 49 Miss. 785; *Jackson* v. *Whitfield,* 51 Miss. 202-06; *Mark*

v. *Scott,* 57 Miss. 826; *Switzer* v. *Benney,* 48 So. 401; 3 C. J., pages 398-9.

The authorities cited by counsel for appellant in the case at bar have no reference to cases like the case at bar, but have reference only to counterclaims or off-sets, but in 3 C. J., page 419, the rule is laid down that the amount claimed in an off-set does not always govern but that the real amount put in controversy should be the amount to determine the jurisdiction of this court on appeal. See also 2 R. C. L., pages 38-9.

We respectfully submit that the phrase, "the amount in controversy," contained in the statute, has reference in this case to the amount sued for; to-wit, thirty-eight dollars and twenty cents.

McGOWEN, J., delivered the opinion of the court.

This suit arose in a court of a justice of the peace on an attachment and garnishment proceeding on a debt alleged to be due Deas & Duke, appellees herein and plaintiffs in the lower court, by J. G. Crooke, appellant herein and defendant in the lower court, amounting to thirty-eight dollars and twenty cents.

The case was appealed to the circuit court and a judgment was rendered there for thirty-eight dollars and twenty cents on the debt issue, which was not contested, and the attachment was sustained on a contest made by the traverse of the grounds of attachment by Crooke. The garnishee, the New Orleans & Northeastern Railroad Company, answered the writ of garnishment, admitting an indebtedness to Crooke of one hundred and eight dollars, wages for labor and services. In the circuit court the debt of thirty-eight dollars and twenty cents was not denied, and was admitted to be due by the defendant, Crooke. The attachment, affidavit, and writ are in the usual form, and the grounds for attachment relied on by the plaintiffs are Nos. 5, 6, 7, and 8, as shown by section 125, Hemingway's Code (section 133, Code of 1906).

With his traverse the defendant filed a claim for damages amounting to one hundred seventy-five dollars actual damages and twenty-five dollars attorney's fee.

Upon the verdict of the jury, the circuit court entered a judgment for plaintiffs sustaining the attachment, and condemning the fund to the payment of the debt in the sum of thirty-eight dollars and twenty cents, and, of course, rendered a judgment for said amount, which was not contested. From this judgment the defendant in attachment appeals here.

At the threshold of this case, counsel for appellees, plaintiffs in the court below, inserted a paragraph in his brief insisting that, inasmuch as the judgment of the lower court in appellees' favor was for less than fifty dollars, the defendant had no right of appeal under our statute, and that this court, therefore, was without jurisdiction. He did not make a motion to dismiss the appeal.

Appellant's reply to this contention was that the counterclaim for damages filed under this statute on the attachment issue, which claim was adjudged against appellant in the lower court, constituted the amount in controversy on the trial of the attachment issue.

Hemingway's Code, section 162 (Code of 1906, section 170), provides for the traverse of the grounds of attachment by the defendant, and, in case the defendant shall succeed, the jury shall assess damages against the plaintiff for wrongfully suing out the attachment. The next section provides for the trial of the attachment issue, and, if adjudged for the defendant, that the attachment be discharged and judgment rendered against plaintiff and his sureties for the actual damages found by the jury, to which damages may be added a reasonable sum as an attorney's fee.

It is manifestly plain that the section mentioned above authorizes the defendant in an attachment suit on the trial of the attachment issue made up to file a counterclaim for actual damages and attorney's fee. In other

words, it is a countersuit for actual damages, liquidated or unliquidated, on the part of the defendant against the plaintiff, which is permitted by the statute.

Section 66, Hemingway's Code (section 86, Code of 1906), provides for appeals from a court of the justice of the peace to the circuit court, and then provides for appeals in such cases to the supreme court, "where the amount in controversy exceeds the sum of fifty dollars."

The amount in controversy upon the attachment issue in the present case was for two hundred dollars less the judgment of thirty-eight dollars and twenty cents in favor of plaintiffs or one hundred sixty-one dollars and eighty cents, which amount the defendant lost by the judgment of the lower court, and which amount is in excess of fifty dollars; therefore the defendant is entitled to appeal here, as would the plaintiffs have been, had the judgment been adverse to them for more than fifty dollars, as calculated above.

We hold, therefore, that, where there is a counterclaim interposed, authorized by law in suits arising in a justice of the peace court for an amount exceeding fifty dollars, after deducting from said counterclaim the amount of the judgment on the debt issue in favor of the plaintiff, then the defendant would be entitled to an appeal to the supreme court. In other words, the opposing claims may be considered in determining the amount in controversy. The rule applicable is well stated in 3 C. J., sections 221 and 222, pp. 417 and 418; also in point here are the cases of *John B. Ryan* v. *John C. Bindley,* 1 Wall. 66, 17 L. Ed. 559 and 560, and *Dushane et al.* v. *Joseph Benedict,* 120 U. S. 630, 7 S. Ct. 696, 30 L. Ed. 810, which cases hold, in principle, that this court has jurisdiction of the appeal in this case.

On the merits of the appeal, we are constrained to say that the truth, in short, is that there was no evidence proving, or tending to prove, that the defendant had concealed property of any kind in any manner, nor that they had refused to apply it to the payment of his debt,

and the same is true as to the assignment of any part of his property of any kind with intent to defraud his creditors. There was likewise no proof that he had undertaken to convert his property in any manner with intent to place it beyond the reach of his creditors, nor was there any proof tending to show that he fraudulently contracted the debt or incurred the obligation on which suit was brought. There is no right of attachment in this state simply on the ground that the debtor owes the debt, and obstinately, for whatever reason, neglects or fails to pay it promptly. These grounds of attachment must be proved.

All the proof in this case was that the debt ran for a long time; that small payments only were made on it twice; and that the officials of the railroad company for whom he worked threatened him with discharge if he did not pay this debt, which he, in the main, ignored. The statement of his earnings and expenses are in a measure developed. He was an extra fireman. There was nothing developed in his examination tending to prove any one of the grounds of attachment. There was some incompetent proof as to what was termed, before the jury, a "bad check" for seven dollars and fifty cents payable to the Gem Café, which, although not honored by the bank, the defendant insisted that he had sufficient funds on deposit at all times to pay same. Why the bank turned the check down is not shown or known. It could have been because it was indorsed on the back of the "Gem Restaurant" instead of the payee, the "Gem Café." At any rate, the check transaction had nothing to do with the attachment issue in this case, and shed no light upon the issue involved.

As to the fifth ground of attachment, this court holds that there must be both a concealment and an unjust refusal to apply to the payment of his debts. *Roach* v. *Brannon,* 57 Miss. 490. As to the eighth ground of attachment, this court holds that an intent to defraud must exist at the time the debt is created in order to author-

ize attachment on that ground. See 6 C. J., 89K; *Hughes v. Lake*, 63 Miss. 552. There must be the purpose or intent to defraud on the part of the debtor contracting the debt to sustain this ground of attachment. We are at a loss to know how it resulted that the plaintiffs won their suit in this case, unless it was because of the "bad check" statement erroneously admitted in evidence by the court below, which was not only prejudicial, but did not tend to sustain any one of the grounds of attachment.

The court below should have granted the defendant a peremptory instruction on the attachment issue, and should have submitted only the question of actual damages and attorney's fee to the jury.

We are remanding the case to the court below in order that a writ of inquiry may issue and a jury be impaneled to assess the actual damages and settle whether or not attorney's fee also will be allowed the defendant for the wrongful suing out of this attachment.

*Reversed and remanded.*