**RIDOLFI v. BENTON.**

Nos. 592, 593.

Municipal Court of Appeals for the
District of Columbia.

April 30, 1948.

Herman Miller, of Washington, D. C., for appellant.

Joseph G. Weeda, of Washington, D. C. (Joseph Lapiana, Jr., of Washington, D. C., on the brief), for appellee.

Ruffin A. Brantley, Asst. Gen. Counsel, of Washington, D.C. (Ernest F. Williams, Gen. Counsel, of Washington, D. C., on the brief), for Robert F. Cogswell, Administrator of Rent Control, who was permitted to file brief and argue as amicus curiae.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

This appeal involves two landlord and tenant actions between the same parties. In one the landlord sought possession of the first floor of premises 1350 H Street, Northeast; and in the other sought possession of the second floor of the same premises. The basis of both actions was non-payment of rent. In both actions the tenant denied any default in rent, alleged that he had paid the landlord $650 in excess of the rent ceiling authorized by the District of Columbia Emergency Rent Act, D.C.Code 1940, § 45—1601 et seq., and sought judgment against the landlord for double that amount. The two actions were tried together and resulted in a judgment in favor of the tenant against the landlord for $1,300, less $80 for rent, plus $200 attorney's fees.

There is little or no dispute as to the facts. The premises in question consisted of a building of two floors. The first or street floor contained a front room used as a barber shop and an apartment in the rear consisting of a bedroom, kitchen and bath. On the second floor was an apart-

ment of four rooms and bath. Prior to 1939 the tenant rented from a former landlord the first floor at a rental of $50 per month and operated a barber shop in the front store and used the rear apartment for living quarters. In 1939 the tenant rented from the same landlord the entire building at a rental of $80 per month. From then until prior to 1941 the tenant continued to use the first floor rear apartment for living quarters, but on January 1, 1941, (the freeze date under the Rent Act) he and his family were occupying the second floor apartment as living quarters, the barber shop was being operated as before and the first floor rear apartment was vacant. This situation continued until February 1946 when the tenant obtained living quarters elsewhere, vacated the second floor apartment and sublet it at a rental of $30 per month. The first floor rear apartment continued unoccupied except for a period of about six months when, because of marital difficulties, the tenant used it for his personal living quarters. In October 1946 the second floor apartment was being sublet, the first floor rear apartment was vacant, and the tenant was using the first floor front as a barber shop. About that time the present landlord demanded an increased rent and insisted on separate leases being made for the first and second floors. The tenant testified that, because of his investment in the barber shop, he was forced to accept the landlord's proposition. On October 20, 1946, two leases for two years each were executed by the parties. One lease related to the first floor only, and provided that it should be used for no business except that of a barber shop and called for a monthly rental of $115. The other lease related to the second floor and called for a monthly rental of $30.

It is the contention of the tenant that the rental agreement of 1939 by which he leased the entire premises at $80 per month, which agreement was in existence on January 1, 1941, was within the protection of the District of Columbia Emergency Rent Act; that the two leases executed in 1946 fixing the combined rental of $145 per month were in violation of the Rent Act; and that the payments made thereunder were $65 per month in excess of the rent ceiling.

Our first question is whether the premises in question, or any part thereof, are within the purview of the Rent Act. The coverage of the Act by its own terms is limited to "housing accommodations," defined as any building, structure or part thereof, "rented or offered for rent for living or dwelling purposes." Code 1940, Supp. V, § 45—1611(a). It is clear that the second floor of the building was continuously used for dwelling purposes and was covered by the Act. It is equally clear that the store on the first floor, used as a barber shop, was never rented or used for dwelling purposes and is beyond the confines of the Act unless brought within by reason of the apartment in the rear. This apartment could be, and at times was, used for dwelling purposes.

While not clearly stated in the record, we think it fairly can be assumed that the barber shop occupied the principal portion of the first floor, that there was no separate entrance to the rear apartment, and that the apartment could not be rented or used practically or conveniently except in connection with and incidental to the use of the front room occupied by the barber shop. It is clear that from prior to 1939 until the present the rear apartment was never separately rented and the first floor was treated as a unit consisting of the shop and apartment. And likewise we think it clear that the rent for the first floor was based primarily upon the commercial use of the shop and not upon the residential use of the rear apartment. In other words, in our opinion the record discloses that the first floor was essentially and primarily commercial and that it was never rented or offered for rent for living or dwelling purposes. Therefore, the first floor was not within the coverage of the Rent Act. Cf. Kessler v. Grasser, 300 Ky. 89, 187 S.W.2d 1012.

It is contended that even though the first floor be commercial, it is nevertheless subject to the rent Act by reason of the fact that at the time of passage of the Act, and also on the freeze date under the Act, it and the second floor were being rented as a whole.

This court has never had occasion to construe the applicability of the Rent Act to a building, which though rented as a whole, is used in part for dwelling purposes and in part for non-dwelling purposes. Cf. Isquith v. Athanas, D.C.Mun.App., 33 A.2d 733. We have held that property rented and used essentially for dwelling purposes is within the Act although incidentally a business is also conducted therein. Carow v. Bishop, D.C.Mun.App., 50 A.2d 598.

Under the Emergency Price Control Act 50 U.S.C.A.Appendix, § 901 et seq., rent regulations it has been held that part of a commercial building, even though a minor part, may be within the protection of the Act if such part is rented separately for dwelling purposes. Fisher v. Michigan Square Building Corporation, 328 Ill.App. 143, 65 N.E.2d 473. And it has been held that non-dwelling property, such as a garage, is subject to the Act when used in connection with the occupancy of housing accommodations. Veillette v. Bowles, Em. App., 150 F.2d 862.

■ None of the foregoing cases are applicable to the present case. Here the parties have consistently treated the two floors as separate and distinct. The two floors were capable of being rented separately and used separately. There was a separate entrance to the upper floor. The use of one floor was not essential to the use of the other. Before 1939 the tenant rented only the first floor. After he had rented the entire building and when he had no need for the second floor he sublet it to a third party. The parties having consistently treated the first and second floors as divisible for rental purposes, we see nothing illegal in the execution in October 1946 of separate leases therefor. And, since the first floor was not within the provisions of the Rent Act, the rental charged therefor was a matter for agreement between the parties.

■ The second floor was subject to the Rent Act and the landlord could not legally charge more than the maximum rent ceiling. The record discloses, however, no violation of that ceiling. Prior to renting the entire building the tenant was paying $50 for the first floor. When in 1939 he rented the entire building, the rent was fixed at $80. He was therefore paying $30 for the second floor. The parties evidently adopted this figure as the rent for the second floor and that was the rent being paid on January 1, 1941, the freeze date under the Act, and automatically it became the maximum rent ceiling. When the tenant sublet the second floor he, recognizing the ceiling, rented it for $30. When the separate leases were executed in October 1946, again recognizing the ceiling, the parties fixed the rent at $30. As we see it, the second floor has rented for $30 from 1939 to the present time and no violation of the rent ceiling has occurred with respect thereto.

The first floor not being subject to the Rent Act and there being no violation of the rent ceiling with respect to the second floor, the judgment below was erroneous and must be reversed.

Reversed.