## FRIEDMAN v. SHERMAN.

### No. 926.

Municipal Court of Appeals for the
District of Columbia.

Argued June 7, 1950.

Decided June 20, 1950.

Herman Miller, Washington, D. C., for appellant.

Solomon H. Feldman, Washington, D. C. (Irving N. Tranen, Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Landlord brought suit against his tenant for the cost of repairs made by the landlord by direction of the Department of Building Inspection for the District of Co-

lumbia. The trial court, sitting without a jury, found for the landlord and the tenant appeals.

The property is a two-story building which the tenant has rented and used in its entirety for 15 years. A shoe repair shop is located in the front room of the lower floor. Two rear first-floor rooms are used as a dining room and kitchen. The second floor, access to which is gained by a stairway from the living rooms on the first floor, consists of three bedrooms and a bath. There is a rear entrance to the living quarters. Utilities for the entire building are supplied by one heating plant, one gas meter, and one electric meter. The repairs made by the landlord consisted of replacement of the hot water boiler, located in the kitchen, and replastering the kitchen ceiling, which was falling down. It is conceded by the parties that the repairs were necessary and their cost reasonable, and that the conditions necessitating the repairs were due to ordinary wear and tear.

The landlord bases his action solely on a lease dated March 1, 1942, entered into by the tenant and the landlord's assignor, who had been the rental agent for the prior owner. This agreement provided that repairs, except roof repairs, shall be made by the tenant. He argues that the premises were not housing accommodations within the meaning of the Rent Control Act[1] and therefore that its provisions are not applicable. The tenant on the contrary urges that the premises were housing accommodations, that the Rent Act fixed the relative responsibilities of the parties and that therefore the 1942 agreement was unenforceable. We agree with this position.

■ Three landlord and tenant agreements were offered in evidence, one dated in 1934, one in 1936 and the third in 1942. The ones dated in 1934 and 1942 were offered by the landlord and admitted; but the one dated in 1936, for a two-year term, which was offered by the tenant, was re-

jected by the trial court. The rejection of the 1936 agreement is assigned as error by tenant and, since the status of the premises on January 1, 1941, was an issue at the trial, we rule that it should have been admitted.

■ The first agreement, that of 1934, did not describe the premises as either business or residence but contained a covenant that no business would be carried on there except that of shoe repairing. The 1936 agreement likewise did not specify the use to be made of the premises except that it contained the same provision that no business would be conducted therein except that of shoe repairing. This lease ended by its terms in 1938, but the tenant continued in possession and continued to pay rent and, so far as the record indicates, no further lease was made until 1942. A tenant continuing in possession and paying rent under an expired lease becomes a tenant at sufferance and such tenancy is impliedly subject to the provisions of the expired lease.[2]

■ Since there is nothing in the 1936 agreement forbidding the use of the premises or a part of them for residence purposes and since it is undisputed that throughout a period of 15 years the tenant has, with at least the implied consent of the landlord, used the major part of the premises for residence purposes, it is clear that this litigation involves housing accommodations within the meaning of the Rent Act.[3] That act froze rents and services as of January 1, 1941, and the act also declared it unlawful "regardless of any agreement, lease, or other obligation heretofore or hereafter entered into, for any person to demand or receive any rent in excess of the maximum-rent ceiling, or refuse to supply any service required by the minimum-service standard * * *."[4]

■ The landlord, however, relies upon a provision of the 1942 lease in which the premises are described as "shoe repair

1. Code 1940, Supp. VII, 45—1601 et seq.

2. Hampton v. Mott Motors, Inc., D.C. Mun.App., 32 A.2d 247.

3. White v. Allan, D.C.Mun.App., 79 A.2d 252.

4. Code 1940, Supp.VII, 45—1605(a).

shop." The lease, like the previous ones, also provides that no business shall be conducted in the premises except that of shoe repair shop. There was no covenant prohibiting the use of the premises or any part of them for residence purposes. It is clear that the mere change in the description of premises, particularly where the rights of a tenant in possession January 1, 1941, are concerned and where the same use is continued, can not operate to change the status of housing accommodations. We think the facts of this case closely resemble those of Wayne v. Burke, D.C.Mun.App., 63 A.2d 669, where a house was rented as an entity and one room was used as a print shop. We also think that the facts here are distinguishable from those of Ridolfi v. Benton, D.C.Mun.App., 58 A.2d 723, involving a two-story building, one room of which was used as a barber shop but where the parties themselves had treated the premises as severable, where living quarters on the first floor were vacant on January 1, 1941, and where there was no access to the first-floor living quarters except through the barber shop.

The landlord offered no evidence of the rent ceiling or service standard on January 1, 1941. The only evidence on these points, offered by the tenant, was the 1936 agreement and his statement that in prior years all repairs had been made by the owner. The 1936 agreement contained no covenant regarding repairs except a covenant that "all repairs rendered necessary by the negligence of the lessee shall be paid for by him, and that he will surrender the same at the expiration of his tenancy in good order, ordinary wear and tear and damage by the act of God or public enemy excepted."

The realities of the situation, therefore, require the conclusion that these were housing accommodations and that the landlord, having failed to prove that the tenant had any responsibility to pay for such repairs January 1, 1941, failed to establish a right to recovery.

Reversed with instructions to award a new trial.